2007-NMCA-149

172 P.3d 173

Lisa Marie **ZAVALA** and Robert Zavala, as Personal Representatives of the Estate of their deceased daughter, Nicole Rosemarie Zavala, Plaintiffs–Appellants,

v.

**EL PASO COUNTY HOSPITAL DISTRICT, dba R.E. Thomason General Hospital; Arturo A. Hernandez, M.D.; and Gilbert Handal, M.D., Defendants–Appellees.**

No. 25,971.

Court of Appeals of New Mexico.

Sept. 25, 2007.

Cassutt, Hays & Friedman, P.A., John P. Hays, Santa Fe, NM, for Appellants.

Holt Babington Mynatt P.C., Matthew P. Holt, Las Cruces, NM, for Appellee El Paso County Hospital District.

Kemp Smith LLP, Ken Slavin, J. Scott Mann, El Paso, TX, for Appellees Arturo A. Hernandez, M.D., and Gilbert Handal, M.D.

## OPINION

WECHSLER, Judge.

{1} This case involves a medical malpractice and wrongful death lawsuit filed by Plaintiffs on behalf of their daughter. Plaintiffs appeal the dismissal of their lawsuit. The lawsuit was filed against Thomas Packard, a New Mexico doctor, and Memorial Medical Center, Inc., a New Mexico hospital (New Mexico Defendants), as well as two Texas doctors, Arturo A. Hernandez and Gilbert Handal (Doctors), and R.E. Thomason General Hospital, a Texas hospital (Hospital). The district court dismissed the claims against both Hospital and Doctors and stayed the proceedings against New Mexico Defendants. We affirm the district court's determination that it lacked personal jurisdiction over Doctors. We reverse the district court's implied conclusion that it had personal jurisdiction over Hospital. Because the district court lacked personal jurisdiction, we do not address Hospital's arguments that Texas law applies to the case and that Hospital is immune from suit, and we remand to the district court for entry of an order dismissing the suit against Hospital and Doctors without prejudice.

## BACKGROUND

{2} Plaintiffs' six-year-old daughter, Nicole, was diagnosed with strep throat on January 16, 2002. Despite treatment with antibiotics, her condition worsened. On February 1, 2002, Plaintiffs took Nicole to Memorial Medical Center in Las Cruces. On that same day, the physician treating Nicole requested that Nicole be transferred to Hospital in El Paso, Texas, and Plaintiff Lisa Zavala, Nicole's mother, signed a form stating that Nicole's medical condition and the risks and benefits of transfer had been explained to her, that she desired that Nicole be transferred, and that she chose that her daughter be transferred to another facility. The name of Hospital was listed on the transfer form. Nicole was transferred to Hospital; she died the next day, February 2, 2002.

{3} Plaintiffs filed a complaint for medical malpractice and wrongful death against New Mexico Defendants on March 28, 2003. On January 28, 2005, Plaintiffs filed an amended complaint adding Hospital and Doctors. Plaintiffs claimed that, when the lawsuit was originally filed, they had no medical records from Hospital, but when they finally were able to depose one of the nurses at Hospital, the nurse's testimony "strongly incriminated" Hospital and Doctors. Plaintiffs alleged that, although medical personnel knew or should have known that Nicole needed to be intubated, she was instead given a sedative, which "depressed her respiratory condition to the point of causing her arrest and subsequent death."

{4} Hospital and Doctors did not file an answer to the amended complaint. Instead, they filed separate motions to dismiss the amended complaint. Doctors argued that dismissal was appropriate based on lack of personal jurisdiction. Hospital claimed that the district court lacked personal jurisdiction over it, that it had not been given proper notice, and that it was immune from suit under the Texas Tort Claims Act, Tex. Civ. Prac. & Rem.Code Ann. §§ 101.001–101.109 (Vernon 2005), and immunity had not been waived. After hearing argument from the parties, the district court found that Doctors did not have sufficient contacts with New Mexico and granted their motion to dismiss. The district court did not directly address the issue of personal jurisdiction over Hospital. Instead, it impliedly found that it had jurisdiction, as evidenced by its finding that Texas law applied to the claims against Hospital and that Hospital was therefore immune from suit. The district court stayed the proceedings as to the remaining New Mexico Defendants. Plaintiffs appealed the district court's decisions.

{5} After the briefing of this case in this Court, our Supreme Court issued an opinion in *Sam v. Estate of Sam*, 2006–NMSC–022, 139 N.M. 474, 134 P.3d 761, reversing the opinion of this Court. In that case, our Supreme Court discussed issues of comity and the statute of limitations under our Tort Claims Act, NMSA 1978, §§ 41–4–1 to –27 (1976, as amended through 2006), with respect to a foreign governmental entity's immunity. At the Hospital's request, we allowed supplemental briefing addressing the issues discussed by the Supreme Court in *Sam*. Hospital argues that Plaintiffs' claims are barred by the statute of limitations under either the New Mexico Tort Claims Act or the Texas Tort Claims Act.

{6} We begin by addressing Plaintiffs' argument that the district court's rulings on personal jurisdiction were premature because they did not have sufficient time for discovery. We then address the merits of Plaintiffs' arguments that the district court had jurisdiction over Hospital and Doctors. Because we conclude that the district court did not have jurisdiction, we do not address the other issues raised on appeal.

## PLAINTIFFS' REQUEST FOR ADDITIONAL DISCOVERY

{7} Plaintiffs argue that the district court's decisions on jurisdiction were premature because Plaintiffs were not permitted to conduct sufficient discovery. With respect to Doctors, they claim only that they were unable to determine whether Dr. Hernandez is registered as a New Mexico Medicaid provider. Plaintiffs have not made any argument that discovery would have provided additional jurisdictional facts about Hospital. We review Plaintiffs' claim under an abuse of discretion standard. *See Roberts v. Piper*

*Aircraft Corp.,* 100 N.M. 363, 368, 670 P.2d 974, 979 (Ct.App.1983).

{8} Doctors filed their motion to dismiss on February 24, 2005. Hospital filed its motion to dismiss on March 2, 2005. The district court granted both motions at the hearing on May 18, 2005. Although an order entered May 5, 2005 stayed discovery, it explicitly excluded discovery pertaining to jurisdiction. Plaintiffs therefore had several months to conduct discovery related to jurisdiction.

{9} In their response to the motions to dismiss, Plaintiffs claimed that they would require discovery before an "ultimate determination" of the jurisdiction issue, stating that "[i]f the Court has any doubt on the issue of personal jurisdiction, it should allow Plaintiffs sufficient time to engage in discovery to determine jurisdictional facts before ruling on the motion." In the hearing on the motions to dismiss, Plaintiffs stated, "[I]f we need additional information, I'm happy to take additional depositions." Plaintiffs did not ask the district court to continue the matter, file motions to allow further discovery, or provide specific details as to their need to discover other than Dr. Hernandez's status as a Medicaid provider. *Cf. Butler v. Deutsche Morgan Grenfell, Inc.,* 2006–NMCA–084, ¶¶ 32–33, 140 N.M. 111, 140 P.3d 532 (rejecting the plaintiff's argument that additional discovery should be permitted as "nothing more than a bare assertion that if he were allowed to pursue discovery, he might find something to support his contention that he could not have discovered his claims through the exercise of reasonable diligence within the limitations period"). Plaintiffs cannot appear at a hearing, present their evidence, and then argue that they should have been permitted additional discovery simply because the district court ruled against them. *See Ciup v. Chevron U.S.A., Inc.,* 1996–NMSC–062, ¶ 22, 122 N.M. 537, 928 P.2d 263 (stating that a party waives the right to appeal discovery issues by "not indicating to the trial court that its resolution of the [issue in question] should be deferred until the court [has] resolved any discovery issues"); *Roberts,* 100 N.M. at 369, 670 P.2d at 980 (stating that the district court did not

abuse its discretion in refusing to allow more time for discovery when the plaintiffs "had not sought discovery ... although they knew that proof of jurisdiction would be necessary at the hearing"). Furthermore, as we discuss below, the evidence Plaintiffs sought to discover would not have been sufficient to allow the exercise of personal jurisdiction.

**PERSONAL JURISDICTION**

{10} Both Hospital and Doctors assert that the district court lacked personal jurisdiction over them. Because neither Hospital nor Doctors were served in New Mexico, the question is whether the district court had jurisdiction under our long-arm statute, NMSA 1978, § 38–1–16 (1971). Although our long-arm statute enumerates acts that may subject non-resident defendants to personal jurisdiction in New Mexico, the necessity of a technical determination of whether a defendant committed such an act has been removed. *See Santa Fe Techs., Inc. v. Argus Networks, Inc.,* 2002–NMCA–030, ¶ 13, 131 N.M. 772, 42 P.3d 1221; *see also Alto Eldorado P'ship v. Amrep Corp.,* 2005–NMCA–131, ¶ 30, 138 N.M. 607, 124 P.3d 585. Therefore, for purposes of personal jurisdiction, we do not focus on whether the acts of Hospital and Doctors "technically fall within the purview of the first prong of the long-arm statute," but on whether Hospital and Doctors had the requisite minimum contacts with New Mexico to satisfy due process. *See Alto Eldorado P'ship,* 2005–NMCA–131, ¶ 30, 138 N.M. 607, 124 P.3d 585.

{11} Due process is satisfied when a defendant has engaged in acts within the state that indicate that the defendant reasonably anticipated being brought into a New Mexico court. *Id.* ¶ 31. In other words, the plaintiff must show that the defendant engaged in "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Id.* (internal quotation marks and citation omitted). For "purposeful availment," we look at the activities by the defendant that were directed toward New Mexico. *Santa Fe Techs.,* 2002–NMCA–030, ¶ 22, 131 N.M. 772, 42 P.3d 1221; *see also Cronin v. Sierra Med. Ctr.,* 2000–NMCA–082, ¶ 23, 129

N.M. 521, 10 P.3d 845 (holding that minimum contacts with the state were not established with respect to the defendants who "did not purposefully initiate any activities in this [s]tate"). "[R]andom, fortuitous, or attenuated contacts" are insufficient to fulfill the requirement. *Sanchez v. Church of Scientology of Orange County*, 115 N.M. 660, 664, 857 P.2d 771, 775 (1993).

{12} Due process may be satisfied in two ways. If a defendant has "continuous and systematic contacts with [New Mexico] such that the defendant could reasonably foresee being haled into court in that state for any matter," New Mexico has general personal jurisdiction and the plaintiff need not demonstrate a connection between the defendant's contacts and the cause of action. *Anthem Ins. Cos. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1234 (Ind.2000), *superseded by statute on other grounds*, Ind. R. Trial P. 4.4, *as recognized in LinkAmerica Corp. v. Cox*, 857 N.E.2d 961 (Ind.2006); *see also Alto Eldorado P'ship*, 2005–NMCA–131, ¶ 29, 138 N.M. 607, 124 P.3d 585 (addressing specific personal jurisdiction but acknowledging the existence of general personal jurisdiction); *Sublett v. Wallin*, 2004–NMCA–089, ¶ 28, 136 N.M. 102, 94 P.3d 845 (discussing specific jurisdiction but acknowledging the existence of general jurisdiction). If a defendant's contacts do not rise to that level, but the defendant nonetheless "purposefully established contact with [New Mexico]," New Mexico will have jurisdiction only if the cause of action arose out of the contacts with New Mexico. *Anthem Ins. Cos.*, 730 N.E.2d at 1235. Both general and specific personal jurisdiction require a showing that exercise of jurisdiction would not "offend traditional notions of fair play and substantial justice." *Alto Eldorado P'ship*, 2005–NMCA–131, ¶ 31, 138 N.M. 607, 124 P.3d 585 (internal quotation marks and citation omitted); *see also Anthem Ins. Cos.*, 730 N.E.2d at 1240–41. This determination is made by balancing five factors: the burden on the defendant, New Mexico's interest, the plaintiff's interest, the interest in an efficient judicial system, and the interest in promoting public policy. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

{13} Plaintiffs have the burden of making a prima facie showing of personal jurisdiction. *See Cronin*, 2000–NMCA–082, ¶ 10, 129 N.M. 521, 10 P.3d 845. If the district court does not hold an evidentiary hearing, as in this case, the plaintiffs' burden is "somewhat lessened" in that affidavits and pleadings will be considered in the light most favorable to jurisdiction. *Doe v. Roman Catholic Diocese of Boise, Inc.*, 121 N.M. 738, 742, 918 P.2d 17, 21 (Ct.App.1996). The question of whether Hospital and Doctors are subject to the personal jurisdiction in New Mexico is one of law, which we review de novo. *See Cronin*, 2000–NMCA–082, ¶ 10, 129 N.M. 521, 10 P.3d 845.

## A. HOSPITAL

{14} Hospital moved to dismiss Plaintiffs' claims, arguing that the district court lacked personal jurisdiction over Hospital, that proper notice was not given under the Texas Tort Claims Act, and that, even if personal jurisdiction was established, Hospital was immune from suit under the Texas Tort Claims Act. As previously discussed, the district court impliedly found that it had jurisdiction over Hospital. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (stating that personal jurisdiction is "an essential element of the jurisdiction of a district ... court, without which the court is powerless to proceed to an adjudication") (omission in original) (internal quotation marks and citation omitted).

{15} Plaintiffs rely on several facts in support of their argument that the district court had personal jurisdiction over Hospital. Plaintiffs point to the agreement between Memorial Medical Center and Hospital, which addresses issues related to the transfer of patients between hospitals. Plaintiffs argue that the number of New Mexico patients treated at Hospital, which apparently generates approximately seven percent of Hospital's income, also supports a finding of personal jurisdiction. As additional support, Plaintiffs note that Hospital maintains a website that is accessible in New Mexico, is registered as a Medicaid provider in New Mexico, is accredited as a regional trauma

center by the American College of Surgeons, and is located "in the border region" and therefore knew that it would regularly treat New Mexicans. Hospital counters by asserting that it has not advertised in New Mexico or otherwise directed its activities toward New Mexico and that the facts Plaintiffs assert show only a "response to the unilateral activity of New Mexicans who [choose] to go to [Hospital] for services" rather than an attempt to attract New Mexico patients. Hospital asserts that, although seven percent of its revenue comes from New Mexico patients, Hospital "does not market itself to New Mexicans, and loses money by treating New Mexicans."

{16} Although we address each of the facts Plaintiffs rely on in turn, we are mindful that the combination of a number of individually insufficient contacts might support a finding of personal jurisdiction. *See Anthem Ins. Cos.*, 730 N.E.2d at 1239; *see also Kathrein v. Parkview Meadows, Inc.*, 102 N.M. 75, 76, 691 P.2d 462, 463 (1984) (concluding that all of the defendant's acts "taken together" were sufficient to justify exercise of personal jurisdiction). We begin by considering whether Hospital has had continuous and systematic contacts that would support general jurisdiction. We also consider whether Hospital has purposefully availed itself of the benefits and protections of our laws to the extent that would support specific personal jurisdiction under the facts of this case. Finally, we address the fairness of exercising personal jurisdiction in circumstances such as these. We conclude that Plaintiffs have shown some limited contacts with New Mexico. Even if we were to conclude that these contacts taken together would be sufficient to support general jurisdiction, we nonetheless conclude that principles of fundamental fairness do not permit the exercise of personal jurisdiction over Hospital.

## 1. General Personal Jurisdiction

{17} We begin by considering the number of New Mexicans treated at Hospital, who generate approximately seven percent of the income of Hospital. Plaintiffs argue that the district court has personal jurisdiction under *Cronin.* In *Cronin,* we held that a Texas hospital established minimum contacts with New Mexico sufficient to support a finding of personal jurisdiction when it "intentionally, purposefully, and persistently solicit[ed] the business of New Mexico customers." *Cronin,* 2000–NMCA–082, ¶ 22, 129 N.M. 521, 10 P.3d 845. We noted that "advertisements support the conclusion that [the hospital] intentionally initiated commercial activities in New Mexico for the purpose of realizing pecuniary gain." *Id.* Plaintiffs argue that *Cronin* supports a finding of personal jurisdiction in this case because *Cronin* also premised its conclusion on the fact that the hospital had "previously performed health care services for other New Mexico customers." *Id.* We disagree. *Cronin* focused on the advertisements directed at New Mexico customers in its determination that New Mexico had personal jurisdiction.

{18} Notably, Plaintiffs have presented no evidence that Hospital intentionally solicited New Mexico patients. *See id.* In *Cronin,* we stated that

> the residence of a recipient of personal services [such as medical services] rendered elsewhere is irrelevant and totally incidental to the benefits provided by the defendant at his own location. It is clear that when . . . a patient travels to receive professional services without having been solicited . . ., then the client, who originally traveled to seek services apparently not available at home, ought to expect that he will have to travel again if he thereafter complains that the services sought by him in the foreign jurisdiction were therein rendered improperly.

*Id.* ¶ 25 (internal quotation marks and citation omitted); *see also Tarango v. Pastrana,* 94 N.M. 727, 729–30, 616 P.2d 440, 442–43 (Ct.App.1980).

{19} We are therefore not convinced that the number of New Mexico patients Hospital treats indicates that it purposefully attracted those patients. Although it may be a factor to consider, treatment of some New Mexico patients is not in itself sufficient to support the exercise of personal jurisdiction over Hospital. *See Harlow v. Children's Hosp.,*

432 F.3d 50, 66 (1st Cir.2005) (stating that "[t]reating patients from Maine in Massachusetts, even on a regular basis, is not the same as engaging in continuous and systematic activity in Maine"); *Anthem Ins. Cos.*, 730 N.E.2d at 1239 (stating that "the percentage of ... business that is conducted in [the forum state] ... is by no means the only or dominant factor"); *see also Wolf v. Richmond County Hosp. Auth.*, 745 F.2d 904, 911–12 (4th Cir.1984) (concluding that South Carolina lacked sufficient contacts despite the fact that approximately twenty percent of the defendant's income came from South Carolina patients); *Mosier v. Kinley*, 142 N.H. 415, 702 A.2d 803, 806, 808 (1997) (stating that, although approximately fifteen percent of the defendant's patients were New Hampshire residents, "jurisdiction ... is not warranted simply because some of the defendant's patients are New Hampshire residents and the defendant has accepted payments from New Hampshire insurance and medicare providers"). *But see Soares v. Roberts*, 417 F.Supp. 304, 308–09 (D.R.I.1976) (concluding that sufficient contacts existed when five percent of a clinic's patients were Rhode Island residents and the clinic "solicited customers directly through local and regional advertising and indirectly by soliciting referrals from local organizations").

{20} Plaintiffs also point to Hospital's website in support of their argument that the district court had jurisdiction. They claim that Hospital advertised its services by means of its website and that internet publication "is equivalent to advertising in a nationally circulated magazine." We disagree. Establishment of a passive website that can be viewed internationally is not sufficient to support general personal jurisdiction absent some showing that the website targeted New Mexico. *See GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349–50 (D.C.Cir.2000) ("[P]ersonal jurisdiction surely cannot be based solely on the ability of [forum] residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the [forum]."). Plaintiffs have not made any such showing. The fact that Hospital's website states that it is "the only Level 1 trauma facility within a 250–mile radius of El Paso" is not sufficient evidence that the website is directed toward New Mexico.

{21} We also consider the effect of Hospital's registration as a Medicaid provider in the State of New Mexico. Although some cases have relied on Medicaid registration in the forum state to support personal jurisdiction, *see, e.g., Cubbage v. Merchent*, 744 F.2d 665, 668 (9th Cir.1984), other cases have held that registration is insufficient. *See, e.g., Harlow*, 432 F.3d at 63–64 (stating that Medicaid registration in the forum state is not sufficient in itself to create personal jurisdiction, even if it is connected to the cause of action in the case); *Nicholas v. Ashraf*, 655 F.Supp. 1418, 1419 (W.D.Pa. 1987) ("Neither casual solicitation not directed to plaintiff nor the fact that Pennsylvania funds may be used to pay for medical bills rises to the level of contacts required by due process[.]"); *Jafarzadeh v. Feisee*, 139 Md. App. 333, 776 A.2d 1, 3–4 (2001) (finding no general jurisdiction despite the defendant's licensing as a physician and as a Medicaid provider in the forum state). We are persuaded that the better rule is that Medicaid registration may be a factor to consider, but that it is not necessarily sufficient by itself to justify the exercise of general personal jurisdiction. *Cf. Tarango*, 94 N.M. at 728, 616 P.2d at 441 ("[I]t would be neither fair nor just to subject defendants to *in personam* jurisdiction on the basis that statements for payment of services rendered in Texas were mailed to plaintiffs in New Mexico.").

{22} Plaintiffs rely on *Presbyterian University Hospital v. Wilson*, 337 Md. 541, 654 A.2d 1324 (1995), to support its argument that Medicaid registration supports jurisdiction. In *Wilson*, the Maryland court determined that due process would not be offended by the exercise of specific personal jurisdiction over a Pennsylvania hospital. *Id.* at 1326. Doctors at the Pennsylvania hospital had arranged travel and accommodations to the hospital for the patient, had advised the patient to remain there despite a lack of insurance, and had engaged in extensive negotiations with the State of Maryland to obtain payment for a

liver transplant for the patient. *Id.* The State of Maryland had approved the Pennsylvania hospital as its sole provider of liver transplants. *Id.* at 1331–32. Although *Wilson* is similar to this case in some respects-both hospitals registered as Medicaid providers in the forum state-*Wilson* also relied on the hospital's "inviting" the patient "and arranging for" his treatment, "convincing him to remain," and "initiating discussions regarding coverage ... with various insurance providers in Maryland." *Id.* at 1335. No such facts appear in the present case. Furthermore, *Wilson* held that the contacts were sufficient only to support specific personal jurisdiction. *Id.* at 1332. Because there is no evidence that the cause of action in this case is related to Medicaid registration, specific jurisdiction cannot be based on that fact.

{23} We are also unpersuaded that Hospital's agreement concerning the transfer of patients to and from Memorial Medical Center, Hospital's accreditation with the American College of Surgeons, and Hospital's location in El Paso support the exercise of jurisdiction over Hospital. We begin with the agreement between Hospital and Memorial Medical Center. The purpose of the agreement is to promote the continuity of care and the timely transfer of patients and records between the facilities. The purpose of the agreement is not to get more business for either hospital or to guarantee a minimum number of referrals. Rather, the agreement sets forth guidelines to be followed when a patient is transferred, once the referring physician determines that a particular patient needs the services of the other hospital.

{24} The agreement also talks to the expectation of the parties as to where they can be sued. As to violations, if Memorial Medical Center brings a claim of breach of contract against Hospital, it must do so in Texas, and Texas law applies. Conversely, if Hospital has a claim against Memorial Medical Center, it must bring it in New Mexico. Also, the agreement provides that each party, to the extent allowed by the laws of its state, will indemnify the other party from all liabilities arising from the party's tortious acts or omissions. This language supports the conclusion that the parties meant for claims against Hospital to be brought in Texas and claims against Memorial Medical Center to be brought in New Mexico. While this language is not dispositive as to the jurisdictional question when suit is brought by a patient, it does provide direction as to what was anticipated by the parties when they made the agreement. *See Alto Eldorado P'ship,* 2005–NMCA–131, ¶ 31, 138 N.M. 607, 124 P.3d 585 (looking to the activities of a non-resident to determine if the non-resident "should reasonably anticipate being haled into court" in the forum state) (internal quotation marks and citation omitted).

{25} Further, the agreement does not provide that Memorial Medical Center will transfer a certain number of patients, patients with certain medical conditions, or, in fact, any patients at all. In the absence of some indication that the agreement made it more likely that patients would be transferred between hospitals, we cannot say that this contact with New Mexico was substantial, much less "continuous and systematic." *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 447–48, 72 S.Ct. 413, 96 L.Ed. 485 (1952) (concluding that due process would not be violated by the exercise of personal jurisdiction over a corporation whose president lived in the forum state and performed many corporate functions in the forum state, including sending correspondence and funds, conducting meetings, and keeping office files). Similarly, the language of the agreement does not provide for any type of patient solicitation in the other state. Nor is there any evidence that Hospital advertised or otherwise tried to attract patients from New Mexico.

{26} Likewise, we see no reason to exercise personal jurisdiction simply because Hospital referred to itself and, apparently, registered itself, as a "regional" trauma center. Such a reference does not indicate that Hospital actively sought out patients from New Mexico. Finally, as we have noted, there is no indication in the record that Hospital was located in El Paso for the purpose of attracting New Mexico patients. Rather, it seems likely that Hos-

pital was located in El Paso for the purpose of treating Texas patients. We cannot justify the exercise of personal jurisdiction based solely upon a close proximity between Hospital and New Mexico and the contacts that arise from such proximity. *See Kopff v. Battaglia*, 425 F.Supp.2d 76, 89 & n. 17 (D.D.C.2006) ("The Court is aware of no legal authority that would support the proposition that mere proximity to the forum is sufficient to confer personal jurisdiction, irrespective of political borders.").

{27} We agree with Plaintiffs that Hospital has some contacts with New Mexico. Most notably, Plaintiffs have shown that Hospital treated a large number of New Mexico patients and arranged to be paid as a New Mexico Medicaid provider. Even if we were to consider the contacts sufficient to support the exercise of general jurisdiction, principles of fairness do not permit the existence of personal jurisdiction.

## 2. Specific Personal Jurisdiction

{28} As we have stated, we may exercise specific personal jurisdiction over a defendant despite the absence of continuous and systematic contacts if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" and the cause of action is related to those contacts. *Sublett*, 2004–NMCA–089, ¶ 14, 136 N.M. 102, 94 P.3d 845 (alteration in original) (internal quotation marks and citation omitted). Plaintiffs have pointed to only one contact with the State of New Mexico that is related to the cause of action in this case: the agreement with Memorial Medical Center.

{29} In *Cronin*, we stated that we would not exercise personal jurisdiction over nonresident physicians "without any evidence that [they] reached into the forum state in order to attract the patient's business." *Cronin*, 2000–NMCA–082, ¶ 26, 129 N.M. 521, 10 P.3d 845. We have already concluded that the agreement in this case did not show an intent to attract New Mexico patients. The agreement therefore cannot be sufficient in itself

to support the exercise of specific personal jurisdiction over Hospital.

## 3. Fair Play and Substantial Justice

{30} Although we have determined that Hospital did have some contacts with New Mexico, we conclude that jurisdiction would nonetheless be inappropriate because it would offend traditional notions of fair play and substantial justice. *See Alto Eldorado P'ship*, 2005–NMCA–131, ¶ 31, 138 N.M. 607, 124 P.3d 585. "[T]he weaker the plaintiff's showing on [purposeful availment], the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Ticketmaster–N.Y., Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir.1994). New Mexico's interest in adjudicating this case and Plaintiffs' interest in litigating within New Mexico are significantly outweighed by the burden on Hospital and interests in efficiency and other public policies. *See Burger King Corp.*, 471 U.S. at 476–77, 105 S.Ct. 2174.

{31} Although New Mexico certainly has an interest in providing its residents with a forum to allow resolution of conflicts, *see DeVaney v. Thriftway Mktg. Corp.*, 1998–NMSC–001, ¶ 14, 124 N.M. 512, 953 P.2d 277 (recognizing "the interest in protecting litigants' right of access to the courts"), its interest in this case is lessened because the injury did not take place within the state. *See Harlow*, 432 F.3d at 67 ("Although a forum state has a significant interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders, that interest is diminished where the injury occurred outside the forum state.") (internal quotation marks and citation omitted).

{32} On the other hand, requiring Hospital to defend against this lawsuit in New Mexico would place a significant burden on Hospital. As an entity of the government of the State of Texas, Hospital is immune from certain types of lawsuits under the Texas Tort Claims Act when it is sued in Texas. The Texas Tort Claims Act might or might not apply in New Mexico courts. *See Sam*, 2006–NMSC–022, ¶ 27, 139 N.M. 474, 134 P.3d 761 (concluding that the New Mexico Tort Claims Act statute of limitations applies to the State of Arizona when it is sued in

New Mexico courts under principles of comity); *see also Harlow*, 432 F.3d at 67 (stating that one factor to consider is whether the forum state's law would be applicable). Regardless of whether it would apply, Hospital has a significant interest in defending this litigation in the state in which it is located.

{33} Furthermore, it will be more efficient for this lawsuit to proceed in Texas. Although Plaintiffs have also sued New Mexico Defendants, the basis for liability on the part of those Defendants is not as closely linked to Hospital's potential liability as to that of Doctors. It will therefore be most efficient if Hospital and Doctors are sued together in the same lawsuit. Because, as we discuss later in this opinion, we conclude that the district court properly determined that it lacked personal jurisdiction over Doctors, we also conclude that interests in efficiency will be best met by a refusal to exercise personal jurisdiction over Hospital in this case.

{34} Finally, we address the public policy interests of both New Mexico and Texas. We first note that "[a] court should normally refrain from exercising jurisdiction when another state has expressed a substantially stronger sovereignty interest and that state's courts will take jurisdiction." *Cubbage*, 744 F.2d at 671. In this case, Hospital is not only located in Texas but it is also an entity of the government of the State of Texas. It is therefore clear that Texas has a substantially stronger sovereignty interest.

{35} When we consider the limited nature of the contacts together with the *Burger King* factors, we conclude that traditional notions of fair play and substantial justice would be offended by the exercise of personal jurisdiction over Hospital. *See Burger King Corp.*, 471 U.S. at 476–78, 105 S.Ct. 2174. The district court erred in exercising personal jurisdiction over Hospital.

**B. DOCTORS**

{36} Plaintiffs argue that they have presented "a colorable claim of minimum contacts with the state by Doctors ... that may subject them to personal jurisdiction in New Mexico." In particular, Plaintiffs claim that Dr. Handal is registered as a New Mexico Medicaid provider, both Doctors are employees of Texas Tech University Health Sciences Center, which is also registered as a New Mexico Medicaid provider, both Doctors worked at Hospital, which Plaintiffs allege "purposefully directed its activities to New Mexico and its residents," Dr. Hernandez accepted Nicole's transfer to Hospital, and both Texas Doctors provided medical services to Nicole at Hospital.

{37} Plaintiffs focus their argument on the alleged contacts of Hospital with New Mexico. Plaintiffs attempt to establish personal jurisdiction over Hospital and then extend that jurisdiction to Doctors based on the fact that they were working at Hospital when Nicole died. Plaintiffs' argument that Doctors worked at Hospital and provided care to Nicole, whether they were acting as employees of Hospital, as independent contractors, or in some other capacity, fails to support the existence of jurisdiction. The acts of a defendant determine whether New Mexico has personal jurisdiction, not the acts of other defendants or third parties. *See Sublett*, 2004–NMCA–089, ¶ 28, 136 N.M. 102, 94 P.3d 845. Even if Hospital's actions could be ascribed to Doctors, we have concluded that the district court did not have personal jurisdiction over Hospital.

{38} We also reject Plaintiffs' suggestion that the agreement between Memorial Medical Center and Hospital and/or the transfer form listing Dr. Hernandez as an accepting physician demonstrate that Doctors had sufficient minimum contacts with New Mexico for purposes of personal jurisdiction. There is nothing to show that Doctors were involved in any way in the agreement between the hospitals. Furthermore, although the transfer form lists Dr. Hernandez, there is nothing to show that the form was shown to him or that he signed the form, and there is nothing to indicate that the fact that his name was listed on the form meant that he agreed with Nicole's transfer to Hospital or had been consulted in any way prior to the transfer.

{39} Plaintiffs have not met their burden of demonstrating the requisite minimum contacts with New Mexico by Doctors. To find otherwise under the facts presented by

48

Plaintiffs would offend "traditional notions of fair play and substantial justice." *Alto Eldorado P'ship*, 2005–NMCA–131, ¶ 31, 138 N.M. 607, 124 P.3d 585 (internal quotation marks and citation omitted). We hold that the district court was correct in determining that it had no personal jurisdiction over Doctors.

## COMITY

{40} The parties filed supplemental briefs on the issues presented by the Supreme Court decision in *Sam*. In *Sam*, our Supreme Court determined that principles of comity govern whether other states have sovereign immunity when sued in New Mexico district court. *Sam*, 2006–NMSC–022, ¶ 8, 139 N.M. 474, 134 P.3d 761. Because we have concluded that the district court lacked personal jurisdiction to proceed, we need not address what law would be applicable to Hospital if a lawsuit against it were to proceed in New Mexico district court.

## CONCLUSION

{41} We affirm the district court's determination that Doctors lacked the requisite contacts to confer personal jurisdiction on them in New Mexico and reverse the district court's implicit determination that it had personal jurisdiction over Hospital. We remand for entry of a dismissal without prejudice as to both Doctors and Hospital.

{42} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CELIA FOY CASTILLO, Judges.