# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2023-NMCA-022**

**Filing Date: November 23, 2022**

**No. A-1-CA-36442**

**AMADO CHAVEZ, RAMONA HERNANDEZ
TODD LOPEZ, as Personal Representative
of the ESTATE OF EDGAR CHAVEZ,
Deceased; and VICTOR CHAVEZ,**

      Plaintiffs-Appellees,

v.

**BRIDGESTONE AMERICAS TIRE
OPERATIONS, LLC, a foreign
company which is the successor to
BRIDGESTONE/FIRESTONE NORTH
AMERICAN TIRE, LLC,**

      Defendant-Appellant,

and

**CRECENCIO JARAMILLO, MAGDALENA
JARAMILLO, and TIRE CLUB U.S.A., INC.,**

      Defendants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Francis J. Mathew, District Judge**

Jaramillo Law Firm, PC
David J. Jaramillo
Albuquerque, NM

The Edwards Law Firm
John Gsanger
Corpus Christi, TX

Liles White PLLC
Kevin Liles
Corpus Christi, TX

for Appellees

Jennings Haug Keleher McLeod
Thomas C. Bird
Benjamin F. Feuchter
Albuquerque, NM

for Appellants

**OPINION**

**HANISEE, Chief Judge.**

**{1}** This interlocutory appeal is again before us on remand from our Supreme Court in *Chavez v. Bridgestone Americas Tire Operations, LLC* (*Chavez II*), 2022-NMSC-006, 503 P.3d 332, where the Court instructed us to determine whether the district court may exercise specific personal jurisdiction over Defendant Bridgestone Americas Tire Operations, LLC (Bridgestone). *See id.* ¶ 5. For the reasons that follow, we answer this question affirmatively.

**BACKGROUND**

**{2}** This appeal arose from a wrongful death action filed against Bridgestone by Plaintiffs—family members and the personal representative of the estate of a New Mexico resident killed in a single-vehicle rollover accident. The fatal accident, which occurred in Texas, was allegedly caused by tire tread separation on a Bridgestone tire installed on the decedent's vehicle. We originally reviewed this matter as an interlocutory appeal initiated by Bridgestone in *Chavez v. Bridgestone Americas Tire Operations, LLC* (*Chavez I*), A-1-CA-36442, mem. op. (N.M. Ct. App. Dec. 21, 2018) (nonprecedential), where we considered whether the district court erred in denying Bridgestone's motion to dismiss for lack of personal jurisdiction. *Id.* ¶ 1.

**{3}** As explained in *Chavez I*, the facts related to the decedent's vehicle and collision were as follows:

> [Decedent] was driving a used 2001 Ford Explorer (the Explorer) that had been purchased from a local car dealership in Rio Rancho, New Mexico. The Explorer came with a Firestone FR480 tire (the FR480), which had been manufactured by Bridgestone, installed as a spare. In July 2015, [d]ecedent took the Explorer to a local tire shop in Sunland Park, New Mexico. The tire shop removed the FR480 from the spare tire position and installed it as the left rear tire on the Explorer. The tire was approximately twenty-two years old at the time. One month later, the tread of the FR480 "peeled off" while [d]ecedent was driving in Texas, causing the Explorer to roll over. Decedent died in the accident. At the time of the accident,

[d]ecedent was driving with his brother from Texas back to their home in New Mexico.

*Id.* ¶ 3. Plaintiffs subsequently brought this suit against Bridgestone as well as several other defendants, alleging in pertinent part "that design and manufacturing defects caused the tread of the FR480 to peel off suddenly," and "that Bridgestone negligently failed to notify tire shops in New Mexico, such as the one that installed the FR480, that they should remove this type of tire from service if it is more than ten years old." *Id.* ¶ 4.

**{4}**     This Court held in *Chavez I* that—notwithstanding the question of specific personal jurisdiction—Bridgestone consented to general personal jurisdiction in New Mexico courts by registering to do business in the State of New Mexico in compliance with the Business Corporation Act (BCA), NMSA 1978, §§ 53-11-1 to -18-12 (1967, as amended through 2021), relying on *Werner v. Wal-Mart Stores, Inc.*, 1993-NMCA-112, ¶ 1, 116 N.M. 229, 861 P.2d 270, *overruled by Chavez II*, 2022-NMSC-006, ¶¶ 38, 54, to affirm the district court's dismissal of Bridgestone's motion to dismiss. *See Chavez I*, A-1-CA-36442, mem. op. ¶¶ 1-2, 8, 13. Because our resolution in *Chavez I* was based on general personal jurisdiction as conveyed by the BCA, we did not reach the question of whether the district court erred in denying Bridgestone's motion to dismiss as it related to specific personal jurisdiction. *See id.* ¶ 8.

**{5}**     On certiorari review of *Chavez I*, our Supreme Court held "that the BCA does not compel a foreign corporation to consent to general personal jurisdiction" and overruled *Werner*, thus reversing our holding. *Chavez II*, 2022-NMSC-006, ¶¶ 1, 38, 54. On remand, our Supreme Court instructed this Court to again consider the original question presented on appeal, that is, whether the district court may exercise specific personal jurisdiction over Bridgestone in Plaintiffs' wrongful death claim and, in turn, whether the district court erred in denying Bridgestone's motion to dismiss on such basis. *Id.* ¶¶ 5, 55-56.

**DISCUSSION**

**{6}**     In its original briefing, Bridgestone argues that Plaintiffs failed to allege claims arising from Bridgestone's purposeful contacts with New Mexico, and that specific personal jurisdiction is "undermined" by the fact that the single-vehicle rollover accident occurred in Texas rather than in New Mexico. Plaintiffs answer that their asserted cause of action arose from Bridgestone's purposeful contacts with New Mexico, and that Bridgestone is subject to specific jurisdiction in New Mexico because it purposefully availed itself of the protections and benefits of New Mexico law under a stream of commerce theory. Whether Bridgestone is subject to specific personal jurisdiction in New Mexico courts is a question of law we review de novo. *Id.* ¶ 14. Further, "[w]here, as here, the district court bases its ruling on the parties' pleadings, attachments, and non-evidentiary hearings, . . . [w]e construe th[ose] pleadings and affidavits in the light most favorable to the complainant." *Sproul v. Rob & Charlies, Inc.*, 2013-NMCA-072, ¶ 6, 304 P.3d 18 (internal quotation marks and citation omitted).

**{7}** In *Chavez II*, our Supreme Court reiterated the bedrock principles of personal jurisdiction, stating that courts recognize two types of personal jurisdiction: "(1) general personal jurisdiction, which is 'all-purpose' and extends to all claims, including those with no underlying connection to a forum, and (2) specific personal jurisdiction, which is 'case-linked' and extends only to claims that arise out of or relate to the defendant's contacts with the forum." 2022-NMSC-006, ¶ 23 (internal quotation marks and citation omitted). Our courts may exercise specific personal jurisdiction over a defendant "despite the absence of continuous and systematic contacts if the defendant has certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice and the cause of action is related to those contacts." *Zavala v. El Paso Cnty. Hosp. Dist.*, 2007-NMCA-149, ¶ 28, 143 N.M. 36, 172 P.3d 173 (alteration, internal question marks, and citation omitted). A state may exercise specific personal jurisdiction over a nonresident defendant if that defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Sproul*, 2013-NMCA-072, ¶ 16 (alteration, internal quotation marks, and citation omitted). Indeed, "[t]he central feature of minimum contacts, . . . is the requirement of purposeful availment. To determine purposeful availment, we look at what activities the defendant directed toward New Mexico." *Id.* (internal quotation marks and citation omitted).

**{8}** As explained recently by the United States Supreme Court, a defendant is considered to have purposefully availed itself of the privilege of conducting activities within the forum state—and, in turn, establishing the minimum contacts necessary to be subject to specific personal jurisdiction—where the defendant's contacts are "the defendant's own choice and not random, isolated, or fortuitous," and where the defendant "deliberately reached out beyond its home—by, for example, exploiting a market in the forum [s]tate or entering a contractual relationship centered there." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, ___ U.S. ___, 141 S. Ct. 1017, 1024-25 (2021) (alteration, internal quotation marks, and citations omitted). Further, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum [s]tate and is therefore subject to the [s]tate's regulation." *Id.* at 1025 (alteration, internal quotation marks, and citation omitted).

**{9}** Bridgestone argues that Plaintiffs' cause of action does not arise from any "identifiable, purposeful contacts" Bridgestone has established with New Mexico, even under Plaintiffs' asserted stream of commerce theory. As we have previously explained, "personal jurisdiction may exist over a nonresident defendant that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *Sproul*, 2013-NMCA-072, ¶ 20 (alteration, emphases, internal quotation marks, and citation omitted). Here, the record reflects that Bridgestone established numerous purposeful contacts in New Mexico to do business in the state. For example, Bridgestone operates a copyrighted, interactive website in New Mexico to solicit business and establish channels of communication with New Mexico residents. Through this website, Bridgestone (1) directs users to the nearest Bridgestone retailer among fifty-four New Mexico dealer locations; (2) offers consumers

coupons and discounts to be used at Bridgestone dealers in New Mexico; (3) allows New Mexico consumers to register their tires with Bridgestone; (4) recruits for employment opportunities in New Mexico; (5) provides warranty and safety information to New Mexico residents; (6) engages in marketing that advertises nationally as well as, in a targeted manner, to New Mexico residents; (7) invites consumers to call them toll-free and follow them on social media platforms; and (8) receives and processes tire orders from New Mexico residents. Bridgestone is documented to have accounts with car and tire dealerships and tire distributors in New Mexico, as well as accounts related to advertising and marketing directed specifically at New Mexico markets. Further, the record reflects that Bridgestone is a frequent litigant in New Mexico courts.

**{10}** Bridgestone argues that the decedent "did not acquire the tire at issue through any of [Bridgestone]'s commercial connections with" New Mexico, and that Plaintiffs' claims do not arise from Bridgestone's purposeful contacts with the state because "no one knows how the FR480 [tire that was installed on the decedent's vehicle] came to be in New Mexico." We disagree with Bridgestone's arguments in this regard because such assertions imply that there must be a causal link between Bridgestone's forum contacts and Plaintiffs' claims. But such a causal link requirement has been explicitly disavowed by the United States Supreme Court in *Ford*, where the Court stated:

> None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. As just noted, our most common formulation of the rule demands that the suit arise out of *or relate to* the defendant's contacts with the forum. The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase "relate to" incorporates real limits, as it must to adequately protect defendants foreign to a forum. But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct.

141 S. Ct. at 1026 (internal quotation marks and citations omitted). In other words, under *Ford*, Plaintiffs need not prove that the fatal accident occurred *because of* Bridgestone's contacts in New Mexico, but rather that the fatal accident is *related to* such contacts. We conclude that the fatal accident is adequately related to Bridgestone's widespread contacts in New Mexico. Further, we note that Plaintiffs' claim asserts not only that the FR480 tire was defective but that Bridgestone failed to warn vehicle service providers in New Mexico—such as the in-state vendors who sold and installed the FR480 tire at issue—that tires of such age should not be placed on vehicles. The fact that the fatal collision allegedly caused by the defective tire is not directly tied to the original point of sale of either the vehicle or the FR480 tire is immaterial, given the nature of Plaintiffs' claim. For these reasons, and in light of Bridgestone's contacts with the state, we conclude that Bridgestone's purposeful

avaiment of the privilege of doing business in New Mexico satisfies the minimum contacts threshold requirement to be subject to specific personal jurisdiction therein.

**{11}** We turn now to Bridgestone's argument that a New Mexico court's ability to exercise specific personal jurisdiction over Bridgestone in this matter is undermined by the fact that the fatal accident occurred in Texas rather than in New Mexico. Bridgestone asserts the same argument in supplemental briefing, which we requested from the parties upon remand from our Supreme Court. In its brief in chief, Bridgestone cites an unpublished opinion from this Court, *Newton v. Newton*, No. 33,429, mem. op. (N.M. Ct. App. Nov. 4, 2014) (nonprecedential), to support its contention that the location of the fatal accident in the instant case precludes specific personal jurisdiction. In *Newton*, we concluded that the plaintiffs' asserted injury did not result from or relate to the defendants' transaction of business within New Mexico because the defendants did not conduct business in the state or in any other way avail itself of the benefits and protections thereof. No. 33,429, mem. op. ¶ 4. Based on this conclusion, we recognized that in order to gain jurisdiction over the plaintiffs' claim, the plaintiffs would need to prove the defendants committed a tortious act within New Mexico. *Id.* We held that because the plaintiffs' asserted injury occurred in Texas and the defendants had no contacts in New Mexico, jurisdiction was improper. *Id.* ¶ 5. Unlike *Newton*, however, the instant case involves a fatal collision alleged to have resulted directly from Bridgestone's transaction of business in New Mexico, which is comprised of countless purposeful contacts within the state.

**{12}** Bridgestone relies as well on *BNSF Railway Co. v. Tyrrell*, 581 U.S. 402, 137 S. Ct. 1549 (2017), for a similar proposition in its brief in chief. In *Tyrrell*, the United States Supreme Court considered, in pertinent part, whether Montana could exercise specific personal jurisdiction over railroad employees' claims for injuries sustained outside of the state. *Id.* at 1558-59. There, while the Court determined that the petitioner had sufficient minimum contacts in Montana, the plaintiff failed to allege any injury from work occurring in, or *related to*, Montana. *Id.* As discussed above, we remain unpersuaded by Bridgestone's assertions that the fatal accident in the instant case is unrelated to the forum state of New Mexico.

**{13}** In its supplemental briefing, Bridgestone argues that *Ford* stands for the proposition that for a nonresident defendant to be subject to specific personal jurisdiction, the underlying asserted harm or injury must have occurred in the forum state. In *Ford*, the United States Supreme Court considered whether the defendant was subject to specific personal jurisdiction in two consolidated proceedings related to claims by plaintiffs who were either injured or killed in automobile accidents involving allegedly defective Ford vehicles. 141 S. Ct. at 1022. The accidents occurred in Minnesota and Montana, *see id.* at 1022-23. Bridgestone argues that such fact—as well as the Court's discussion thereof—confirms that it cannot be subject to specific personal jurisdiction in the instant case. We disagree.

**{14}** The *Ford* Court never stated that its conclusion regarding specific personal jurisdiction was based on where the accidents occurred. Indeed, the court explained

that while "the place of a plaintiff's injury and residence cannot create a defendant's contact with the forum [s]tate," the place of a plaintiff's injury and residence "may be relevant in assessing the link between the defendant's forum contacts and the plaintiff's suit—including its assertions of who was injured where." *Id.* at 1031-32. The *Ford* Court further clarified its reasoning in *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255, 137 S. Ct. 1773, 1783-84 (2017), where the Court had previously found specific jurisdiction to be improper where "non[]resident plaintiffs brought claims in the California state court against Bristol-Myers Squibb, the manufacturer of a nationally marketed prescription drug called Plavix. The plaintiffs had not bought Plavix in California; neither had they used or suffered any harm from the drug there." *Ford Motor Co.*, 141 S. Ct. at 1030-32. The *Ford* Court explained that the crux of its reasoning in *Bristol-Myers Squibb* was not merely that the plaintiffs had not suffered their asserted harm in the forum state but rather that such fact only carried determinative weight when considered *along with* additional facts that the nonresident plaintiffs had not been prescribed Plavix in the forum state, had not purchased Plavix in the forum state, and had not used Plavix in the forum state. *Ford Motor Co.*, 141 S. Ct. at 1030-32. The fact that the *Bristol-Myers Squibb* plaintiffs' asserted harm did not occur in the forum state was not, itself, determinative of whether the defendant could be subject to specific personal jurisdiction in the forum state. *Ford Motor Co.*, 141 S. Ct. at 1030-32. Rather, such fact was simply one of many facts the United States Supreme Court analyzed in determining whether California could exercise specific personal jurisdiction over the case. *Id.* at 1027-28.

**{15}**    Here, too, the fact that the fatal collision did not occur in New Mexico is not, on its own, determinative of whether Bridgestone may be subject to specific personal jurisdiction in this state. Our courts have never held that the asserted harm must occur in New Mexico for a nonresident defendant to be subject to specific personal jurisdiction, and we decline to expand our precedent in such a manner as requested by Bridgestone. Further, given the preceding discussion, we remain unpersuaded that *Ford* stands for the proposition Bridgestone asserts—that is, that a plaintiff's harm must occur in the forum state for specific personal jurisdiction to attach to a nonresident defendant. While it is undoubtedly common that factual scenarios underlying jurisdictional disputes often address injuries or harm that occurred in the forum state, such is not required to subject a nonresident defendant to specific personal jurisdiction in that forum state.

**{16}**    Here, Plaintiffs allege that the decedent suffered an injury—albeit one that occurred out of state—resulting in wrongful death because of Bridgestone's defective product and, perhaps more crucially, Bridgestone's failure to warn dealers and consumers that tires of such age as the tire in question here should not be placed on consumers' vehicles. Bridgestone extensively promotes, sells, and services tires in New Mexico. We conclude that the connection between Plaintiffs' claims and Bridgestone's activities in New Mexico—that is, the "relationship among the defendant, the forum, and the litigation," *Ford*, 141 S. Ct. at 1032 (internal quotation marks and citation omitted)— is close enough to support specific personal jurisdiction, and further conclude that under these specific facts, it is inconsequential that the fatal collision occurred in Texas rather than New Mexico.

**CONCLUSION**

**{17}**   We, therefore, hold there to be no error in the district court's denial of Bridgestone's motion to dismiss and affirm.

**{18}   IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**GERALD E. BACA, Judge**