# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2022-NMSC-006

Filing Date: November 15, 2021

No. S-1-SC-37489

AMADO CHAVEZ,
RAMONA HERNANDEZ,
TODD LOPEZ, as Personal Representative
of the Estate of EDGAR CHAVEZ, Deceased,
and VICTOR CHAVEZ,

       Plaintiffs-Respondents,

v.

BRIDGESTONE AMERICAS TIRE
OPERATIONS, LLC, a foreign company
which is the successor to BRIDGESTONE/
FIRESTONE NORTH AMERICAN TIRE, LLC,

       Defendant-Petitioner,

and

CRECENCIO JARAMILLO,
MAGDALENA JARAMILLO, and
TIRE CLUB U.S.A., INC.,

       Defendants.

ORIGINAL PROCEEDING ON CERTIORARI
Francis J. Mathew, District Judge

Keleher & McLeod, P.A.
Thomas C. Bird
Albuquerque, NM

for Petitioner

Jaramillo Law Firm, P.C.
David Joseph Jaramillo
Albuquerque, NM

Liles White PLLC
Kevin W. Liles

Corpus Christi, TX

The Ammons Law Firm
John B. Gsanger
Houston, TX

for Respondents

UNM School of Law
David J. Stout
Michael B. Browde
Albuquerque, NM

for Amicus Curiae New Mexico Trial Lawyers Association

and

**No. S-1-SC-37490**

**GABRIEL ARTURO RASCON RODRIGUEZ;**
**RAYITO DEL CARMEN GUTIERREZ DE RASCON;**
**JAVIER ORTIZ TARANGO, Deceased;**
**LEE HUNT, Representative of the Estate of**
**JAVIER ORTIZ TARANGO;**
**BERTA EBILA RAMIREZ;**
**LORENZA SUSANA ORTIZ;**
**MARITZA BERENICE ORTIZ RAMIREZ;**
**CARMEN TARANGO CASTRO;**
**CRISTIAN ANTONIO ROMERO GARCIA, Deceased;**
**LEE HUNT, Representative of the Estate of**
**CRISTIAN ANTONIO ROMERO GARCIA;**
**ROBERTO ROMERO and HILDA TELLEZ,**
**Next Friends of C.D.R. and C.D.R., Minors;**
**ROBERTO ROMERO, Individually;**
**LAURO CRUZ, Deceased;**
**LEE HUNT, Representative of the Estate of LAURO CRUZ;**
**ORALIA NAJERA;**
**MARIA CONCEPTION CRUZ NAJERA, Individually**
**and as Next Friend of L.M.A.C., a Minor;**
**CARLOS CRUZ;**
**OLGALIDIA CRUZ;**
**EUFEMIO CRUZ;**
**MIGUEL CRUZ;**
**PERLA ALEJANDRA CRUZ;**
**MAYRA PAMELA CRUZ;**
**MARIA ESTHER CRUZ;**
**AGUSTINA CRUZ;**

**JAVIER ACOSTA RAMIREZ;**
**BERENICE ACOSTA;**
**JOSE JAVIER ACOSTA;**
**JAVIER ACOSTA;**
**ADRIAN RAMOS, Individually and as Next Friend**
**of R.A.R.R., A.R.R., Y.A.R.R., and A.R.R., Minors;**
**YADIRA RUVALCABA DE RAMOS;**
**LUIS CANSECO VAZQUEZ, Individually and**
**as Next Friend of G.C. and S.A.C., Minors;**
**GUADALUPE LOPEZ;**
**JULIA CANSECO;**
**LUIS RAUL ORTEGA GABALDON;**
**JESUS ALEJANDRO JIMENEZ ORTEGA; and**
**ERNESTO VARGAS LOPEZ,**

       Plaintiffs-Respondents,

v.

**FORD MOTOR COMPANY and**
**COOPER TIRE AND RUBBER COMPANY,**

       Defendants-Petitioners,

and

**FERNANDO GAYTAN BUSTOS,**

       Defendant-Respondent,

and

**FERNANDO GAYTAN BUSTOS,**

       Cross-Plaintiff-Respondent,

v.

**FORD MOTOR COMPANY and**
**COOPER TIRE AND RUBBER COMPANY,**

       Cross-Defendants-Petitioners.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Francis J. Mathew, District Judge**

Snell & Wilmer LLP
Todd E. Rinner

Albuquerque, NM

Hogan Lovells US LLP
Sean Marotta
Washington, DC

for Petitioner Ford Motor Company

Brownstein Hyatt Farber Schreck, LLP
Eric R. Burris
Albuquerque, NM

Norton Rose Fulbright US LLP
Troy L. Vancil
San Antonio, TX

for Petitioner Cooper Tire and Rubber Company

Jaramillo Law Firm, PC
David Joseph Jaramillo
Albuquerque, NM

Touchet Law Firm, PC
Maria E. Touchet
Albuquerque, NM

The Ammons Law Firm
John B. Gsanger
Houston, TX

Law Offices of James B. Ragan
James B. Ragan
Corpus Christi, TX

for Respondents

UNM School of Law
David J. Stout
Michael B. Browde
Albuquerque, NM

for Amicus Curiae New Mexico Trial Lawyers Association

and

**No. S-1-SC-37491**

**MANUEL EDEL NAVARRETE**

**RODRIGUEZ, Individually and as Personal Representative of the Estate of EDGAR NAVARRETE RODRIGUEZ, Deceased,**

Plaintiff-Respondent,

v.

**FORD MOTOR COMPANY,**

Defendant-Petitioner,

and

**LUIS A. PONCE,**

Defendant.

**ORIGINAL PROCEEDING ON CERTIORARI**
**David K. Thomson, District Judge**

Snell & Wilmer LLP
Todd E. Rinner
Albuquerque, NM

Hogan Lovells US LLP
Sean Marotta
Washington, DC

for Petitioner Ford Motor Company

Arrazolo Law, P.C.
Gilbert Arrazolo
Albuquerque, NM

Law Offices of James B. Ragan
James B. Ragan
Corpus Christi, TX

for Respondent

UNM School of Law
David J. Stout
Michael B. Browde
Albuquerque, NM

for Amicus Curiae New Mexico Trial Lawyers Association

and

**No. S-1-SC-37536**

**TODD FURMAN;**
**LEON HUNT, as the Personal Representative**
**of the Estate of RENEE FURMAN;**
**TODD LOPEZ, as the Personal Representative**
**of the Estate of SHYANNE WILBUR and NICOLE WILBUR;**
**MELISSA WILT, Individually and as Legal Guardian**
**for MEGAN WILBUR, an individual/minor;**
**and KRISTEN WILBUR,**

       Plaintiffs-Respondents,

and

**PATRICK A. CASEY, as the Personal Representative**
**of the Estate of MICHELLE L. BATES;**
**TRICIA BATES; and**
**CHRISTOPHER BATES,**

       Intervenor/Plaintiffs-Respondents,

v.

**THE GOODYEAR TIRE & RUBBER COMPANY,**

       Defendant-Petitioner

and

**WALTER JAMES BYERS and**
**THE NEW MEXICO DEPARTMENT OF TRANSPORTATION,**

       Defendants.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Bryan P. Biedscheid, District Judge**

Released for Publication February 22, 2022.

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Donald A. DeCandia
Emil John Kiehne
Albuquerque, NM

Husch Blackwell, LLP

David M. Stauss
Denver, CO

for Petitioner Goodyear Tire & Rubber Company

Jaramillo Law Firm
David Joseph Jaramillo
Albuquerque, NM

Law Office of Natasha M. Hanna, P.C.
Natasha Hanna
Myrtle Beach, SC

Greene Broillet & Wheeler LLP
Christine Spagnoli
Alan Van Gelder
Santa Monica, CA

Esner, Chang & Boyer
Stuart B. Esner
Shea S. Murphy
Pasadena, CA

for Respondents

Newsome Melton, PA
C. Richard Newsome
William C. Ourand
R. Frank Melton, II
Orlando, FL

Marks & Harrison
Kevin T. Hadden
Ryan T. Walker
J. Penn Crawford
Richmond, VA

for Intervener-Respondent

Atler Law Firm, P.C
Timothy J. Atler
Albuquerque, NM

Haynes and Boone, LLP
Mary-Christine Sungaila
Costa Mesa, CA

for Amicus Curiae Product Liability Advisory Council, Inc.

McGinn, Montoya, Love & Curry, PA
Kathleen J. Love
Albuquerque, NM

American Association for Justice
Jeffrey R. White
Washington, DC

for Amicus Curiae American Association for Justice

UNM School of Law
David J. Stout
Michael B. Browde
Albuquerque, NM

for Amicus Curiae New Mexico Trial Lawyers Association

**OPINION**

**BACON, Justice.**

**{1}**     This consolidated appeal involves important considerations about fairness to litigants and the sovereign limits of New Mexico. Herein, we consider whether a foreign corporation that registers to transact business and appoints a registered agent under Article 17 of New Mexico's Business Corporation Act (BCA), NMSA 1978 §§ 53-17-1 to -20 (1967, as amended through 2021), thereby consents to the exercise of general personal jurisdiction in New Mexico. If adhered to, this "consent by registration" basis for general personal jurisdiction would allow New Mexico courts to adjudicate all claims filed against a foreign corporation registered under the BCA, regardless of the nature or extent of any connection between our state and the claims asserted. Nearly thirty years ago, our Court of Appeals in *Werner v. Wal-Mart Stores, Inc.*, 1993-NMCA-112, ¶ 10, 116 N.M. 229, 861 P.2d 270, construed the BCA to require consent by registration. Confronted with the same issue now, we conclude that *Werner*'s reasoning is outmoded and hold that the BCA does not compel a foreign corporation to consent to general personal jurisdiction.

**{2}**     This question comes to us in the context of four interlocutory appeals upon orders denying the petitioners' motions to dismiss the claims against them for lack of general or specific personal jurisdiction. In three of the separate proceedings below, the Court of Appeals followed *Werner* and concluded that general personal jurisdiction was proper over the petitioners Ford Motor Company, Bridgestone Americas Tire Operations, and Cooper Tire & Rubber Company. *Navarrete Rodriguez v. Ford Motor Co.*, 2019-NMCA-023, ¶¶ 31-32, 458 P.3d 569; *Chavez v. Bridgestone Americas Tire Operations, LLC*, A-1-CA-36442, mem. op. ¶ 13 (Ct. App. Dec. 21, 2018) (nonprecedential); *Rascon Rodriguez v. Ford Motor Co.*, A-1-CA-35910, mem. op. ¶ 13 (Ct. App. Dec. 21, 2018) (nonprecedential). In the fourth proceeding, the Court of Appeals denied petitioner Goodyear Tire & Rubber Company's application for

interlocutory appeal on a similar issue. *Furman v. Goodyear Tire & Rubber Co.*, A-1-CA-37818 (Ct. App. Jan 18, 2019). For ease of reference, we refer collectively to these four petitioning foreign corporations—all of whom are manufacturers of automobiles or automobile components and registered to transact business under the BCA—as "the Manufacturers."

{3}     The Manufacturers challenge the reasoning of *Werner* and the three Court of Appeals opinions. The Manufacturers argue that the BCA does not require them to consent to general personal jurisdiction in New Mexico. They further argue that any exercise of jurisdiction premised on consent by registration would (a) violate their 14th Amendment due process rights under the United States Constitution, (b) create an unconstitutional condition by requiring the Manufacturers to waive their due process rights as a condition of transacting business in New Mexico, and (c) violate the Dormant Commerce Clause, U.S. Const. art. 1, § 8, cl. 3. The Manufacturers contend that the United States Supreme Court's personal jurisdiction jurisprudence following *International Shoe Co. v. Washington Office of Unemployment Compensation & Placement*, 326 U.S. 310 (1945), and most notably the opinion in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), has limited the appropriate settings for general personal jurisdiction to those of a corporation's "at home" state of incorporation and principal place of business. *Daimler*, 571 U.S. at 138-39. The Manufacturers thus assert that contemporary personal jurisdiction jurisprudence has overruled, *sub silentio*, the pre-*International Shoe* case of *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 95-96 (1917), which upheld the constitutionality of consent by registration.

{4}     We acknowledge that the continuing viability of *Pennsylvania Fire* and consent by registration remains unsettled. *See, e.g.*, *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, ___ U.S. ___, ___, 141 S. Ct. 1017, 1037 n.3 (2021) (Gorsuch, J., specially concurring) ("It is unclear what remains of the old 'consent' theory after *International Shoe*'s criticism. Some courts read *International Shoe* and the cases that follow as effectively foreclosing it, while others insist it remains viable" (citing *Lanham v. BNSF Ry. Co.*, 939 N.W.2d 363, 368-71 (Neb. 2020), *op. modified on other grounds on denial of reh'g*, 944 N.W.2d 514 (Neb. 2020), and *Navarrete Rodriguez*, 2019-NMCA-023, ¶¶ 12-14)). However, we decline to reach the constitutional challenges presented because we hold, as a matter of statutory construction, that the BCA does not require a foreign corporation to consent to general personal jurisdiction in New Mexico. We therefore reject the construction accorded to the BCA by *Werner* and reverse the decisions of the Court of Appeals.

{5}     In so holding, we note that the United States Supreme Court's opinion in *Montana Eighth*, 141 S. Ct. at 1022-32, issued during the pendency of this appeal, may bear on questions of specific personal jurisdiction preserved in each of the underlying proceedings but not reached by the Court of Appeals. *See, e.g.*, *Navarrete Rodriguez*, 2019-NMCA-023, ¶¶ 2, 7. We remand to the Court of Appeals with instructions to consider whether the district court may exercise specific personal jurisdiction over each of the Manufacturers in the four cases on appeal.

## I. BACKGROUND

**{6}** These appeals from the First Judicial District Court involve claims asserted by Plaintiffs against the Manufacturers for personal injury and/or wrongful death allegedly caused by defects in the Manufacturers' automobiles or automobile components. As the question we address here is one of law, we only briefly summarize the underlying factual circumstances.

**{7}** In *Chavez*, S-1-SC-37489, a New Mexico resident was killed, and another was injured, in a single vehicle rollover collision in Texas. The collision was allegedly caused by tire tread separation on the vehicle's Bridgestone tire. In *Rascon Rodriguez*, S-1-SC-37490, eleven passengers of a Ford Super Club Wagon were either injured or killed in a single vehicle accident allegedly caused by tread separation on the vehicle's Cooper tire. The passengers, all nonresidents, were driving through New Mexico when the accident occurred. In *Navarrete Rodriguez*, S-1-SC-37491, a New Mexican resident was found dead at the scene of a single vehicle collision. The collision was apparently caused when the decedent drove too fast around a curve on a New Mexico highway and lost control of his Ford F-250. The vehicle left the roadway and rolled over multiple times, collapsing the vehicle's roof structure, which allegedly killed the decedent. And in *Furman*, S-1-SC-37536, several nonresidents were killed and several other nonresidents were injured in a multiple vehicle collision on I-40 in New Mexico. The collision allegedly occurred when yet another nonresident lost control of his vehicle after the tread separated on the vehicle's Goodyear tire.

**{8}** None of the specific products involved in these lawsuits was designed or manufactured in New Mexico. The Manufacturers also did not directly sell the products to Plaintiffs in New Mexico. It does appear, however, that the Manufacturers have actively marketed and distributed identical or nearly identical products in our state.

**{9}** Each of the Manufacturers filed motions to dismiss in the district court, asserting that general personal jurisdiction was improper because the Manufacturers were not at home in New Mexico and specific personal jurisdiction was improper because Plaintiffs' claims were not caused by the Manufacturers' New Mexico contacts. Each of the district judges denied these motions and certified the issues for interlocutory appeal.

**{10}** The proceedings below thus were presented to the Court of Appeals as interlocutory appeals from orders denying the Manufacturers' respective motions to dismiss for lack of general or specific personal jurisdiction. The Court of Appeals affirmed the district court's denial of Ford's motion to dismiss in the *Navarrete Rodriguez* appeal. *Navarrete Rodriguez*, 2019-NMCA-023, ¶¶ 31-32. In so ruling, the Court of Appeals affirmed the order of the district court under the "right for any reason" doctrine, finding that Ford was subject to general personal jurisdiction in New Mexico. *Id.* ¶ 7. The Court of Appeals did not reach the issue of specific personal jurisdiction that the district court had found dispositive. *Id.*

**{11}** More particularly, the Court of Appeals concluded that Ford had consented to general personal jurisdiction by registering to transact business under the BCA, basing

its decision on the holding in *Werner*, 1993-NMCA-112, ¶ 11, that the BCA required consent by registration. *Navarrete Rodriguez*, 2019-NMCA-023, ¶¶ 25, 32. The Court of Appeals further declined to overturn *Werner*, indicating that the decision remained controlling until overruled by this Court. *Id.* ¶ 27.

{12}  The Court of Appeals also rejected Ford's various constitutional challenges to consent by registration. *Id.* ¶¶ 15-16, 19-20. For example, in response to Ford's due process challenges to the continuing authority of *Pennsylvania Fire*, 243 U.S. at 95-96, the Court of Appeals explained that, while "[m]uch has changed in the jurisprudence of personal jurisdiction" since *Pennsylvania Fire*, "the [United States] Supreme Court has not expressly overturned it." *Navarrete Rodriguez*, 2019-NMCA-023, ¶ 13. In response to Ford's assertion that the BCA did not provide sufficient notice of its consent to jurisdiction, the court explained that "the *Werner* decision gives companies notice that registration under the Act and continued compliance with its reporting requirements, indicates consent to general jurisdiction." *Id.* ¶ 28.

{13}  The Court of Appeals issued nonprecedential opinions in *Chavez* and *Rascon Rodriguez* which largely echoed its precedential opinion in *Navarrete Rodriguez*, 2019-NMCA-023, and asserted general personal jurisdiction against Bridgestone, Ford, and Cooper in each respective suit. *See Chavez*, A-1-CA-36442, mem. op. ¶ 2; *Rascon Rodriguez*, A-1-CA-35910, mem. op. ¶ 2. We granted certiorari to review these three decisions. The Court of Appeals denied Goodyear's application for interlocutory appeal in *Furman*. We granted review of that denial on the issues of consent by registration and specific personal jurisdiction. However, in this opinion we only address consent by registration, and we remand to the Court of Appeals for further review on specific personal jurisdiction.

## II.   STANDARD OF REVIEW

{14}  The question we address here is whether a foreign corporation that registers to transact business in New Mexico and appoints a registered agent for service of process should be deemed to have waived its due process rights and impliedly consented to the exercise of general personal jurisdiction. This is a question of law that we review de novo. *Tercero v. Roman Cath. Diocese of Norwich*, 2002-NMSC-018, ¶ 5, 132 N.M. 312, 48 P.3d 50.

## III.   DISCUSSION

{15}  The Due Process Clause of the Fourteenth Amendment "constrains a [s]tate's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). A judgment issued without personal jurisdiction over a nonresident defendant "is void in the rendering [s]tate and is not entitled to full faith and credit elsewhere." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). "But to the extent a [nonresident defendant] exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state," and "[t]he exercise of that privilege may give rise to obligations." *Int'l Shoe*, 326 U.S. at 319. Accordingly, "a [s]tate may authorize its courts to exercise personal

jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (internal quotation marks omitted) (quoting *Int'l Shoe*, 326 U.S. at 316).

{16}    At its core, the due process requirement of personal jurisdiction is a constitutional right assured to a defendant. *Walden*, 571 U.S. at 284 ("Due process limits on the [s]tate's adjudicative authority principally protect the liberty of the nonresident defendant."); *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty."). "Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." *Ins. Corp. of Ir.*, 456 U.S. at 703. Consent by registration is one method by which this right has been waived. *See Pennsylvania Fire*, 243 U.S. at 96.

{17}    The consent by registration theory of personal jurisdiction we address here is a relic of the now-discarded *Pennoyer v. Neff* era of personal jurisdiction jurisprudence. *See* 95 U.S. 714 (1877), *overruled in part by Shaffer v. Heitner*, 433 U.S. 186, 212 (1977). As our decision today is informed by the history of this jurisprudence, we begin by briefly reviewing this history as it relates to consent by registration. We next turn to the threshold question presented in this consolidated appeal: whether the BCA requires a registering foreign corporation to consent to general personal jurisdiction. Because we find that the BCA does not require this consent, we decline to reach any of the arguments the Manufacturers raise against the constitutionality of consent by registration.

**A.      The Law of Personal Jurisdiction and Consent by Registration**

**1.      Review of personal jurisdiction jurisprudence**

{18}    We begin our review of personal jurisdiction jurisprudence in 1877 with *Pennoyer*, 95 U.S. at 734-36. In *Pennoyer*, the United States Supreme Court decided that a state lacked jurisdiction to enter a personal judgment against a nonresident defendant that had not been personally served with process in the state. *Id*. The Court's decision was based on the understanding that a state possesses "jurisdiction and sovereignty over persons and property within its territory," but none "without its territory." *Id.* at 722. The *Pennoyer* decision thus created a presence-based test for personal jurisdiction, reasoning that a defendant "must be brought within [a state's] jurisdiction by service of process within the [s]tate, or his voluntary appearance." *Id*. at 733.

{19}    Business registration statutes were viewed as one mechanism for perfecting in-state service on a foreign corporation doing business within a territory. *See, e.g.*, *Silva v. Crombie & Co.*, 1935-NMSC-041, ¶¶ 9-21, 39 N.M. 240, 44 P.2d 719 (discussing a statutory mechanism for obtaining jurisdiction over a foreign corporation, withdrawn from transacting business within the state, through service on the New

Mexico Secretary of State); *Lafayette Ins. Co. v. French*, 59 U.S. 404, 407-08 (1855) (holding that full faith and credit applied to a state's judgment against a foreign corporation where service was made on that corporation's registered agent pursuant to the state's business registration statute). Jurisdiction under these registration statutes was premised on varying legal fictions, including the fiction that the corporation was present through its registered agent, and the fiction that the corporation had impliedly consented to jurisdiction in exchange for the privilege of doing business in the state. *See, e.g.*, *Ex parte Schollenberger*, 96 U.S. 369, 376 (1877) (explaining that a foreign corporation registering to do business "ha[s] in express terms, in consideration of a grant of the privilege of doing business within the [s]tate, agreed that [it] may be sued there; that is to say, that [it] may be found there for the purposes of the service of process.").

{20}   The United States Supreme Court decided *Pennsylvania Fire* within *Pennoyer*'s presence-based jurisdictional framework. *Pennsylvania Fire*, 243 U.S. at 95. In *Pennsylvania Fire*, the Supreme Court concluded that a state may construe a business registration statute to imply consent to personal jurisdiction for a suit with no underlying connection to the state and that such a construction "did not deprive the [corporation] of due process of law even if it took the [corporation] by surprise." *Id.* While acknowledging that the consent to jurisdiction so acquired was a "mere fiction, justified by holding the corporation estopped to set up its own wrong as a defense," the Supreme Court explained that the fiction was accepted under existing jurisprudence. *Id.* at 96; *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 633 (2d Cir. 2016) ("A corporation's 'consent' through registration has thus always been something of a fiction, born of the necessity of exercising jurisdiction over corporations outside of their state of incorporation."). The Court explained that the corporation had voluntarily chosen to register and had "take[n] the risk" that the state courts would interpret the state's business registration statute to imply consent. *Pennsylvania Fire*, 243 U.S. at 96. *Pennsylvania Fire* thus stands for the proposition that a state may validly exercise general personal jurisdiction over a registered foreign corporation under a theory of consent by registration.

{21}   The Supreme Court reaffirmed *Pennsylvania Fire* in subsequent *Pennoyer*-era cases. *See, e.g.*, *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 170, 175 (1939) (citing *Pennsylvania Fire* for the proposition that "[a] statute calling for such a designation [of a corporate agent] is constitutional, and the designation of the agent 'a voluntary act'"); *Robert Mitchell Furniture Co. v. Selden Breck Constr. Co.*, 257 U.S. 213, 215-16 (1921) ("Of course when a foreign corporation appoints one as required by statute it takes the risk of the construction that will be put upon the statute and the scope of the agency by the State Court."); *Louisville & N.R. Co. v. Chatters*, 279 U.S. 320, 325, 329 (1929) ("Even when present and amenable to suit it may not, unless it has consented, be sued on transitory causes of action arising elsewhere which are unconnected with any corporate action by it within the jurisdiction." (citations omitted)).

{22}   In 1945, the United States Supreme Court's pivotal decision in *International Shoe*, 326 U.S. at 318-19, cast doubt on the continuing authority of *Pennsylvania Fire*. In *International Shoe*, the Court overruled *Pennoyer*'s presence-based jurisdictional

framework and transitioned to a relationship-based framework. *International Shoe*, 326 U.S. at 318-19 (holding that certain "acts, because of their nature and quality and the circumstances of their commission, *may* be deemed sufficient to render the corporation liable to suit" (emphasis added)). Criticizing *Pennoyer*'s framework as too "mechanical or quantitative," the *International Shoe* Court held that the jurisdictional inquiry should instead weigh "the quality and nature of the [defendant's forum-related] activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." 326 U.S. at 319. The *International Shoe* Court likewise cast doubt upon the continuing viability of fictional tests for jurisdiction. *See id.* at 318 ("True, some of the decisions holding the corporation amenable to suit have been supported by resort to the legal fiction that it has given its consent to service and suit, consent being implied from its presence . . . . But more realistically it may be said that those authorized acts were of such a nature as to justify the fiction."). However, the Supreme Court did not specifically reference *Pennsylvania Fire* or expressly overrule that decision.

**{23}** In the time since the Supreme Court decided *International Shoe*, "[t]he primary focus of [the Court's] personal jurisdiction inquiry [has been] the defendant's relationship to the forum [s]tate." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, ___ U.S. ___, ___ 137 S. Ct. 1773, 1779 (2017). Subsequent opinions of the Supreme Court have refined and expanded the reach of *International Shoe*'s relationship-based framework. *See Shaffer*, 433 U.S. at 212 & n.39 (concluding that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny" and overruling prior decisions to the extent that they are "inconsistent with" that precedent). The United States Supreme Court recognizes two types of personal jurisdiction under this framework: (1) general personal jurisdiction, which is "all-purpose" and extends to all claims, including those with no underlying connection to a forum, and (2) specific personal jurisdiction, which is "case-linked" and extends only to claims that "arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (brackets, internal quotation marks, and citation omitted); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8-9 (1984); *Goodyear*, 564 U.S. at 923-24; *Daimler*, 571 U.S. at 127-29. Consent by registration provides a basis for general personal jurisdiction. *Pennsylvania Fire*, 243 U.S. at 95 (allowing a registered foreign corporation to be sued on non-forum related litigation); *Navarrete Rodriguez*, 2019-NMCA-023, ¶ 31 (asserting general personal jurisdiction against the Manufacturers).

**{24}** "Since *International Shoe*, [the United States Supreme] Court's decisions have elaborated primarily on circumstances that warrant the exercise of specific jurisdiction." *Goodyear*, 564 U.S. at 924. The Supreme Court's "post-*International Shoe* opinions on general jurisdiction, by comparison, are few." *Daimler*, 571 U.S. at 129. Notwithstanding their scarcity, these rulings have significantly curtailed the recognized bases for general personal jurisdiction, *see Goodyear*, 564 U.S. at 919-20, casting further doubt on the efficacy of *Pennsylvania Fire* and the continued viability of consent by registration. Most recently, in *Daimler*, the Supreme Court explained that

only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. . . . With respect to a corporation, the place of incorporation and principal place of business are "paradigm . . . bases for general jurisdiction." Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place— as well as easily ascertainable. These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims.

*Daimler*, 571 U.S. at 137 (second ellipsis in original) (brackets and citations omitted). Accordingly, the test for general personal jurisdiction "is whether that corporation's affiliations with the State are so continuous and systematic *as to render it essentially at home in the forum State*." *Id.* at 139 (emphasis added) (brackets, internal quotation marks, and citation omitted); *see also Mont. Eighth*, 141 S. Ct. at 1024 ("A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the [Forum] State." (citation omitted)). The *Daimler* Court explained that these constraints promote the due process concerns of foreseeability of litigation, *see* 571 U.S. at 139, as well as concerns of comity and sovereign limits, *id.* at 141-42.

## 2. Manufacturers' challenge to *Pennsylvania Fire* and consent by registration

{25}    In this consolidated appeal, the Manufacturers argue that *Pennsylvania Fire* is incompatible with post-*International Shoe* jurisprudence. We likewise note an apparent contradiction. If *Pennsylvania Fire* remains good law, then a foreign corporation would be subject to general personal jurisdiction in any state that demands consent as a condition of transacting business. Such an expansive view of general personal jurisdiction would appear inconsistent with the "at home" standard of *Daimler*. *Cf. Lockheed Martin*, 814 F.3d at 640 ("If mere registration and the accompanying appointment of an in-state agent—without an express consent to general jurisdiction— nonetheless sufficed to confer general jurisdiction by implicit consent, every corporation would be subject to general jurisdiction in every state in which it registered, and *Daimler*'s ruling would be robbed of meaning by a back-door thief."). A foreign corporation's compliance with a business registration statute, by itself, likely would not fall among the "limited set of affiliations" that will subject a foreign corporation to general personal jurisdiction, *Daimler*, 571 U.S. at 137, as it appears that every state in the union has adopted a registration statute. *See Mont. Eighth*, 141 S. Ct. at 1024 (asserting that the "breadth" of general personal jurisdiction "imposes a correlative limit: [o]nly a select set of affiliations with a forum will expose a defendant to such sweeping jurisdiction" (internal quotation marks and citation omitted)); Tanya J. Monestier, *Registration Statutes, General Jurisdiction, and the Fallacy of Consent*, 36 Cardozo L. Rev. 1343, 1363 (2015) ("Every state has a registration statute that requires corporations doing business in the state to register with the state and appoint an agent for service of process." (footnote omitted)). Similarly, "the Court has made plain that legal fictions, notably 'presence' and 'implied consent,' should be discarded, for they conceal the actual bases on which jurisdiction rests." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 900 (2011) (Ginsburg, J., dissenting) (citation omitted); *see also BNSF Ry. Co. v. Tyrell*, ___ U.S. ___, ___, 137 S. Ct. 1549, 1557, 1558-59 (2017) (rejecting

presence and "doing business" bases of personal jurisdiction and reaffirming that the "Fourteenth Amendment due process constraint described in *Daimler* . . . applies to all state-court assertions of general jurisdiction over nonresident defendants; the constraint does not vary with the type of claim asserted or business enterprise sued").

**{26}**  An infirmity thus lurks within *Pennsylvania Fire*'s foundations; an infirmity that is evinced by the litany of conflicting authorities the parties here cite in support of their respective positions.

**{27}**  The Manufacturers cite several decisions either concluding that *Pennsylvania Fire* is inconsistent with the *International Shoe* framework or declining to require consent by registration. *See, e.g.*, *Lockheed Martin*, 814 F.3d at 639; *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 135-36 (4th Cir. 2020); *State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 52-53 & n.11 (Mo. 2017) (en banc); *Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*, 90 N.E.3d 440, 447 (Ill. 2017); *Segregated Acct. of Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 898 N.W.2d 70, 82 (Wis. 2017); *Lanham*, 939 N.W.2d at 370-71. The reasoning of these opinions is persuasive; *Pennsylvania Fire* is at odds with the current approach to personal jurisdiction and the expectations created by the expansion of interstate and global commerce.

**{28}**  Plaintiffs, in response, cite the opinions of the relatively few states that continue to recognize consent by registration. *See, e.g.*, *Merriman v. Crompton Corp.*, 146 P.3d 162, 170-71 (Kan. 2006); *Rykoff-Sexton, Inc. v. Am. Appraisal Assocs., Inc.*, 469 N.W.2d 88, 90-91 (Minn. 1991). Unlike New Mexico's BCA, however, several of these states have business registration statutes that contain explicit language of a foreign corporation's consent to jurisdiction. *See, e.g.*, *Merriman*, 146 P.3d at 170 (construing Kansas registration statute, later repealed, that required a foreign corporation to issue "an irrevocable written consent . . . that actions may be commenced against it"); *see also* 42 Pa. Cons. Stat. Ann. § 5301(a)(2) (1978) (providing that "qualification as a foreign corporation" in the state "shall constitute . . . general personal jurisdiction"), *constitutionality questioned by In Re Asbestos Prods. Liab. Litig. (No. VI)*, 384 F. Supp. 3d 532, 534-36 (E.D. Pa. 2019). In contrast to these other states' statutes, New Mexico's BCA speaks only of consent in the limited context of a withdrawing foreign corporation's consent to service on the Secretary of State. Section 53-17-15(A)(4).

**{29}**  We further note that several courts that applied consent by registration either arrived at their decision by following binding pre-*Daimler* precedent or were later disagreed with or overruled by other opinions. *See e.g.*, *Brieno v. Paccar*, 17-CV-867, 2018 WL 3675234, *3-4 (D.N.M. Aug. 2, 2018) (memorandum opinion and order) (following the holding in *Werner*); *Ally Bank v. Lenox Fin. Mortg. Corp.*, CV 16-2387, 2017 WL 830391 *2-3 (D. Minn. Mar. 2, 2017) (order) (following *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199-1200 (8th Cir. 1990) and distinguishing *Daimler*); *Otsuka Pharm. Co., Ltd. v. Mylan Inc.*, 106 F. Supp. 3d 456, 469-70 (D.N.J. 2015) (following *Litton Indus. Sys. Inc. v. Kennedy Van Saun Corp.*, 283 A.2d 551, 556 (1971)), *disagreed with by Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 176-77 (D.N.J. 2016); *Forest Labs., Inc. v. Amneal Pharms. LLC*, CV 14-508, 2015 WL 880599 *3-4, 10-11 (D. Del. Feb. 26, 2015) (report and recommendation) (following *Sternberg v.*

*O'Neil*, 550 A.2d 1105, 1116 (Del. 1988)), *abrogated by Genuine Parts Co. v. Cepec*, 137 A.3d 123, 145-48 & n.120 (Del. 2016). We thus question the applicability and weight of these decisions.

{30}    Some Plaintiffs in the present appeal also reference statutes adopted by other states that expressly disclaim consent by registration. *See, e.g.*, *DeLeon v. BNSF Ry. Co.*, 426 P.3d 1, 7 & n.1 (Mont. 2018) (explaining that the Montana registration statute "explicitly tells corporations that they are *not* subject to personal jurisdiction in Montana based solely on their appointment of a registered agent" and lists similar statutes adopted in ten other states). These Plaintiffs argue that the existence of these disclamatory statutes, combined with the BCA's silence on the issue, evinces an intent by our Legislature to adopt consent by registration. But our Legislature's silence on this issue should not be construed as its affirmation. *See Torrance Cnty. Mental Health Program, Inc. v. N.M. Health & Env't Dep't*, 1992-NMSC-026, ¶ 18, 113 N.M. 593, 830 P.2d 145 ("[G]iving positive legal effect to bare legislative silences is to be assiduously avoided because insofar as a law's claim to obedience hinges on that law's promulgation pursuant to agreed-upon processes for the making of laws . . . those processes do not include failing to enact a legal measure." (omission in original) (internal quotation marks and citation omitted)). It is more likely that our Legislature has "simply failed to express its will" on whether to adopt this disclamatory statutory language. *Id.* ¶ 19.

{31}    Despite these considerations, we join our Court of Appeals in recognizing that the United States Supreme Court has not expressly overruled *Pennsylvania Fire* or directly revisited the issue of consent by registration since *International Shoe*. *Navarrete Rodriguez*, 2019-NMCA-023, ¶ 13 ("Much has changed in the jurisprudence of personal jurisdiction since 1917. However, in the 100-plus years since *Pennsylvania Fire* was decided, the Supreme Court has not expressly overturned it."). Familiar principles of stare decisis instruct that *Pennsylvania Fire* should be followed if the circumstances so demand. *See, e.g.*, *Rodriguez de Quijas v. Shearson/Am. Express*, *Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of [the United States Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower court] should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.").

{32}    It likewise appears that express consent remains an appropriate basis for specific personal jurisdiction. *See Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964). Additionally, a nonresident defendant can impliedly consent to specific personal jurisdiction through action or inaction. *See Ins. Corp. of Ir.*, 456 U.S. at 704-05; Rule 1-012(H)(1) NMRA. Neither *International Shoe* nor *Daimler* addressed the issue of consent, but both opinions acknowledged that consent presents a distinct avenue for personal jurisdiction. *See, e.g.*, *Daimler*, 134 S. Ct. at 755-56 (identifying *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), as "the textbook case of general jurisdiction appropriately exercised over a foreign corporation *that has not consented to suit in the forum*" (emphasis added) (internal quotation marks and citation omitted)); *Int'l Shoe*, 326 U.S. at 317 ("'Presence' . . . has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise

to the liabilities sued on, *even though no consent to be sued . . . has been given*."
(emphasis added)). It thus appears that a nonresident defendant's consent remains an
appropriate basis for an exercise of personal jurisdiction. Yet, considering the infirmities
of *Pennsylvania Fire*, we are reluctant to "resort to the legal fiction that [a foreign
corporation] has given its consent to service and suit" through mere compliance with a
business registration statute. *Int'l Shoe*, 326 U.S. at 318.

**{33}**     Nevertheless, we need not resolve these doubts about *Pennsylvania Fire* in our
opinion here, as whether a registration statute requires consent by registration is first a
matter of local statutory construction. *See Robert Mitchell Furniture Co.*, 257 U.S. at
216. *Pennsylvania Fire* is only controlling if our local statute requires a foreign
corporation to consent to general personal jurisdiction. *Id.* As discussed next, we hold
that the BCA does not so require. As such, we need not and do not resolve any of the
constitutional challenges raised by the Manufacturers*.*

## B.      New Mexico's BCA and Consent by Registration

**{34}**     With this understanding of the history and present posture of consent by
registration, we turn to the threshold question presented in this consolidated appeal:
whether the BCA requires a registered foreign corporation to consent to general
personal jurisdiction in New Mexico. Our Court of Appeals first construed the BCA to
require this consent in *Werner*, 1993-NMCA-112. As explained herein, we conclude that
the BCA does not require consent by registration. Although the *Werner* Court engaged
in proper principles of statutory construction in concluding that the BCA expresses a
legislative intent to equalize domestic and foreign corporations under New Mexico law,
we do not agree that consent by registration would promote this equalizing intent.
Further, we decline to construe the BCA to require consent by registration in the
absence of clear statutory language to that effect. We therefore hold that the BCA does
not compel a registered foreign corporation to consent to general personal jurisdiction in
New Mexico.

### 1.      The *Werner* opinion

**{35}**     We briefly outline the *Werner* opinion to provide context to our holding. In
*Werner*, a New Mexico plaintiff asserted claims against a registered foreign corporation
for injuries arising from an accident in Georgia. *Werner*, 1993-NMCA-112, ¶ 2. The
Court of Appeals reasoned that specific personal jurisdiction was improper under New
Mexico's long-arm statute, NMSA 1978, § 38-1-16 (1971), because the episode-in-suit
occurred out of state. *Werner*, 1993-NMCA-112, ¶¶ 4, 7. But the Court went on to
consider whether the BCA would support general personal jurisdiction over the
defendant through consent by registration. *Id.* ¶ 7.

**{36}**     The *Werner* Court began by noting that, historically, the "designation of an agent
for service of process may confer power on a state to exercise its jurisdiction." *Id.* ¶ 9.
However, the Court acknowledged that such designation "does not automatically do so."
*Id.* The *Werner* Court thus proceeded to "look to the legislative intent underlying the
adoption of Section 53-17-11 to see if such exercise of jurisdiction over foreign

corporations was intended by enactment of the statute." *Werner*, 1993-NMCA-112, ¶ 9. The Court reasoned that Section 53-17-2, which "defines the power of a registered foreign corporation as the same but no greater than that of a domestic corporation," reflected a legislative intent "to equalize foreign and domestic corporations operating within New Mexico with respect to rights and privileges, as well as duties, restrictions, penalties and liabilities." *Id.* ¶ 10 (internal quotation marks and citation omitted). The Court understood this equalizing intent to "support the reading of the service-of-process statute as conferring state-court jurisdiction." *Id.*

**{37}** The *Werner* Court also concluded that Section 53-17-15, which addresses service upon a withdrawing corporation for specific jurisdiction purposes, showed that a currently registered corporation's consent was "without an express limitation" and thus extended to non-forum related litigation. *Werner*, 1993-NMCA-112, ¶ 11. With respect to due process considerations, the Court concluded that the record was "too scant . . . to make a determination" and suggested that the defendant "recognize[d] that it ha[d] sufficient presence in New Mexico to satisfy due process" because the defendant did not press the issue at oral argument. *Id.* ¶ 14. The Court thus held that New Mexico courts had jurisdiction over the defendant in that suit. *Id.*

**{38}** The Manufacturers challenge *Werner* in the present appeal. They argue that the BCA does not require consent by registration. Plaintiffs, on the other hand, argue that the BCA does compel a registered foreign corporation to consent to general personal jurisdiction and that *Werner* promotes the Legislature's overall intent to equalize foreign and domestic corporations by subjecting foreign corporations to general personal jurisdiction in New Mexico. For the reasons set forth below, we agree with the Manufacturers and overrule *Werner*.

## 2.    Principles of statutory construction

**{39}** Our decision today rests on well-settled principles of statutory construction. Generally, "[i]n construing the language of a statute, our goal and guiding principle is to give effect to the intent of the Legislature." *Lujan Grisham v. Romero*, 2021-NMSC-009, ¶ 23, 483 P.3d 545. "We use the plain language of the statute as the primary indicator of legislative intent." *Baker v. Hedstrom*, 2013-NMSC-043, ¶ 11, 309 P.3d 1047 (brackets, internal quotation marks, and citation omitted). "When a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *State v. Chakerian*, 2018-NMSC-019, ¶ 10, 458 P.3d 372 (internal quotation marks and citation omitted). "But courts must exercise caution in applying the plain meaning rule. Its beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., nonfrivolous) differences of opinion concerning the statute's meaning." *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 23, 117 N.M. 346, 871 P.2d 1352. "In such a case, it is part of the essence of judicial responsibility to search for and effectuate the legislative intent—the purpose or object—underlying the statute." *Id.*

**{40}** Moreover, "[t]he language of a statute may not be considered in a vacuum, but must be considered in reference to the statute as a whole and in reference to statutes dealing with the same general subject matter." *State v. Montano*, 2020-NMSC-009, ¶ 13, 468 P.3d 838 (internal quotation marks and citation omitted). "When possible, we must read different legislative enactments as harmonious instead of as contradicting one another." *Id.* (internal quotation marks and citation omitted). We will "take care to avoid adoption of a construction that would render [a] statute's application absurd or unreasonable or lead to injustice or contradiction." *State v. Radosevich*, 2018-NMSC-028, ¶ 8, 419 P.3d 176 (internal quotation marks and citation omitted). "And we must be guided by the well-established principle of statutory construction that statutes should be construed, if possible, to avoid constitutional questions." *Id*. (internal quotation marks and citation omitted). Applying these principles of statutory construction to the BCA, we conclude that the BCA does not require a registering foreign corporation to consent to general personal jurisdiction.

### 3. The BCA and consent by registration

**{41}** Foremost to our decision, we conclude that the plain language of the BCA does not require a foreign corporation to consent to jurisdiction. At no point does the BCA state that a foreign corporation consents to general personal jurisdiction by registering and appointing a registered agent under the Act. We will not graft a requirement of this consent onto the language of the statute, as we conclude that the Legislature has not clearly expressed an intent to require foreign corporations to so consent. *Cf. State v. Maestas*, 2007-NMSC-001, ¶ 15, 140 N.M. 836, 149 P.3d 933 ("We may only add words to a statute where it is necessary to make the statute conform to the [L]egislature's clear intent, or to prevent the statute from being absurd."); *State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125 ("We will not read into a statute any words that are not there, particularly when the statute is complete and makes sense as written.").

**{42}** The BCA defines the term *foreign corporation* as "a corporation for profit organized under laws other than the laws of this state." NMSA 1978, § 53-11-2(B) (2001). A foreign corporation is prohibited from "transact[ing] business in this state until it has procured a certificate of authority to do so from the [Secretary of State]." Section 53-17-1. A foreign corporation is further barred from "maintain[ing] any action, suit or proceeding in any court of this state, until [it] has obtained a certificate of authority," § 53-17-20(A), and is exposed to liability for fees, taxes, and penalties if it transacts business in our state without a certificate of authority, § 53-17-20(C).

**{43}** A foreign corporation that seeks to obtain a certificate of authority to transact business in New Mexico must designate a proposed registered agent, § 53-17-5(A)(5), and then "have and continuously maintain" a registered agent in the state, § 53-17-9. A registered agent

> shall be an agent of the corporation upon whom any process, notice or demand required or permitted by law to be served upon the corporation may be served. Nothing in this section limits or affects the right to serve

any process, notice or demand, required or permitted by law to be served upon a corporation in any other manner now or hereafter permitted by law.

Section 53-17-11. We emphasize that Section 53-17-11 speaks only in terms of a registered agent's authority to accept service of process as "required or permitted by law." *Id*. Implicit within this language is a requirement that service upon a foreign corporation's registered agent must satisfy due process, including the due process requirement of personal jurisdiction.

**{44}** Although the BCA does not explicitly require a registering foreign corporation to consent to personal jurisdiction, the *Werner* Court reasoned that Section 53-17-2 evinced a legislative intent "to equalize foreign and domestic corporations," *Werner*, 1993-NMCA-112, ¶ 10, "including being subject to state court jurisdiction." *Navarrete Rodriguez*, 2019-NMCA-023, ¶ 26 (citing *Werner*, 1993-NMCA-112, ¶ 10). Section 53-17-2 provides that a foreign corporation obtaining a certificate of authority shall

enjoy the same, but no greater, rights and privileges as a domestic corporation organized for the purposes set forth in the application pursuant to which the certificate of authority is issued; and, except as otherwise provided in the [BCA], is subject to the same duties, restrictions, penalties and liabilities now or hereafter imposed upon a domestic corporation of like character.

*Id.* We agree that this statute expresses a legislative intent to equalize domestic and foreign corporations under New Mexico law. *See El Paso Elec. Co. v. Real Est. Mart, Inc.*, 1979-NMSC-023, ¶¶ 10-14, 92 N.M. 581, 592 P.2d 181 (discussing the legislative intent underlying Section 53-17-2 and explaining that a foreign public utility possesses equal rights to eminent domain under New Mexico law because "[i]t would be inconsistent to subject a foreign public utility to our laws and then to deny [it] the same rights and protections as those corporations originally domiciled in our state"). However, we do not agree that consent by registration would promote this equalizing intent.

**{45}** Consent by registration would require a foreign corporation to waive any due process objections to personal jurisdiction as a condition of transacting business in New Mexico. *Cf. Pennsylvania Fire*, 243 U.S. at 95. But a similarly situated domestic corporation is not required to waive its due process rights by its own appointment of a registered agent, NMSA 1978, §§ 53-11-11, -14 (1967), because jurisdiction over a domestic corporation is based on its domestic relationship with our state. *Daimler*, 571 U.S. at 137. It cannot fairly be said that a foreign corporation, by obtaining a certificate of authority under the BCA, creates a domestic relationship with New Mexico. Section 53-17-1 ("[N]othing in the [BCA] authorizes this state to regulate the organization or the internal affairs of [a foreign] corporation."). If construed to require consent by registration, the BCA would not grant the foreign and domestic corporations the "same . . . rights," § 53-17-2, to due process in New Mexico.

**{46}** Nor is consent by registration necessary to effect Section 53-17-2's purpose. Our long-arm statute, § 38-1-16, extends specific personal jurisdiction to any "duties,

restrictions, penalties and liabilities," § 53-17-2, arising from or relating to the corporation's activities in our state, thus ensuring that our state courts may enforce a foreign corporation's forum-related obligations. *Mont. Eighth*, 141 S. Ct. at 1024-26 (recognizing that specific jurisdiction may be exercised when a defendant "purposefully avails itself of the privilege of conducting activities within the forum [s]tate" and the plaintiff's claims "arise out of or relate to the defendant's contacts with the forum" (internal quotation marks and citation omitted)); *see also Winward v. Holly Creek Mills, Inc.*, 1972-NMSC-009, ¶ 10, 83 N.M. 469, 493 P.2d 954 (extending specific personal jurisdiction under New Mexico's long arm statute to claims that "lie[] in the wake" of the defendant's forum-related conduct).

**{47}**    We also conclude that the provisions of the BCA relating to a foreign corporation's registered agent, § 53-17-5(A)(5) and § 53-17-9, -10, -11, do not express an intent to require consent by registration. Rather, we read these provisions as effectively harmonizing with our long-arm statute, § 38-1-16, and with other provisions regarding service of process against foreign corporations, NMSA 1978, §§ 38-1-5 to -6.1 (1905, as amended through 1993), by providing a convenient means of identifying a corporate agent with authority to accept service. *Cf.* Thomas L. Bonham, *The Entry and Regulation of Foreign Corporations Under New Mexico Law and Under the Model Business Corporation Act*, 6 Nat. Resources J. 617, 635-40 (1966) (reviewing the Model Business Corporation Act in relation to New Mexico service of process statutes and suggesting that the model act "renders it easier for New Mexico citizens to secure a remedy in their domestic forum" because "[t]he process server must only attempt to seek the corporation's agent at the corporation's registered office"). But the BCA itself does not confer state court jurisdiction over a registered foreign corporation. Rather, the BCA "establish[es] requirements for corporations should they desire to resort to the courts of this state in seeking remedies," while "the long arm statute submits a corporation to the jurisdiction of the courts through its acts, regardless of the corporation's intention to use the courts." *Winward*, 1972-NMSC-009, ¶ 7; *see also* § 53-17-20(A) (prohibiting a foreign corporation from "maintain[ing] any action, suit or proceeding in any court of this state, until [it] has obtained a certificate of authority").

**{48}**    We acknowledge, however, that Section 53-17-15 contains some language of a foreign corporation's consent. A foreign corporation wishing to withdraw from New Mexico must submit an application to the Secretary of State with, among other statements and information,

> a statement that the corporation revokes the authority of its registered agent in this state to accept service of process and *consents* that service of process in an action, suit or proceeding based upon a cause of action arising in this state during the time the corporation was authorized to transact business in this state may thereafter be made on the corporation by service thereof on the [S]ecretary of [S]tate.

Section 53-17-15(A)(4) (emphasis added). Thus, the BCA requires a withdrawing foreign corporation to consent that service against the corporation may be made upon

the Secretary of State for a "proceeding based upon a cause of action arising in this state," or, in other words, for specific jurisdiction purposes. *Id.*

{49}   The *Werner* Court reasoned that Section 53-17-15(A)(4)'s language requiring a withdrawing corporation's consent to service for specific jurisdiction purposes suggested that a currently registered foreign corporation's consent to jurisdiction under Section 53-17-11 was intended to be general and "without an express limitation." *Werner*, 1993-NMCA-112, ¶ 11. We do not agree. Section 53-17-15 does not provide that a registered foreign corporation consents to personal jurisdiction in New Mexico "without an express limitation." *Id*. Section 53-17-15 refers only to a withdrawing corporation's consent to service of process on the Secretary of State in lieu of service on its withdrawn agent. The statute does not refer to a currently registered foreign corporation's consent to general personal jurisdiction in New Mexico.

{50}   Considering the constitutional constraints involved, we conclude that it would be particularly inappropriate to infer a foreign corporation's consent to general personal jurisdiction in the absence of clear statutory language expressing a requirement of this consent. In *Telephonic, Inc. v. Rosenblum*, 1975-NMSC-067, ¶ 19, 88 N.M. 532, 543 P.2d 825, we held that a nonresident defendant that consents to personal jurisdiction under a choice-of-law provision in a private contract must receive clear notice of its consent. "An agreement to waive [personal jurisdiction] must be deliberately and understandingly made, and language relied upon to constitute such a waiver must clearly, unequivocally[,] and unambiguously express a waiver of this right." *Id.*; *see also Monks Own Ltd. v. Monastery of Christ in Desert*, 2006-NMCA-116, ¶ 10, 140 N.M. 367, 142 P.3d 955 ("It is clear that a choice of law clause in a contract, without more, is insufficient to establish that one has agreed in advance to submit to the jurisdiction of the courts in any forum."), *aff'd*, 2007-NMSC-054, ¶¶ 1, 9, 142 N.M. 549, 168 P.3d 121. A registering foreign corporation is at least entitled to the same notice of its consent to personal jurisdiction as that of a party to a private contract. *Telephonic*, 1975-NMSC-067, ¶ 19.

{51}   We find the clear notice requirements of *Telephonic* to be persuasive in resolving the question presented. Of course, we recognize that consent by registration is distinguishable from the express consent at issue in *Telephonic*, as consent by registration would be implied from "the actions of the defendant" which "may amount to a legal submission to the jurisdiction of the court, whether voluntary or not." *Ins. Corp. of Ir.*, 456 U.S. at 704-05. Yet notice and foreseeability remain among the central concerns of personal jurisdiction jurisprudence, as due process requires "that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (brackets, internal quotation marks, and citation omitted).

{52}   Thus, we conclude that any legislative intent to require a foreign corporation to consent to general personal jurisdiction should be "clearly, unequivocally[,] and unambiguously express[ed]" in the statutory text. *Cf. Telephonic*, 1975-NMSC-067, ¶ 19. The language of the BCA relating to a foreign corporation's equal rights and responsibilities under New Mexico law, § 53-17-2, appointment and maintenance of a

registered agent with authority to accept service of process, §§ 53-17-9, -11, and a withdrawing corporation's consent to service on the Secretary of State, § 53-17-15(A)(4), does not clearly, unequivocally, and unambiguously express an intent to require a foreign corporation to consent to general personal jurisdiction in New Mexico. Based on these same notice and foreseeability considerations, *Telephonic*, 1975-NMSC-067, ¶ 19, we further disagree with the Court of Appeals to the extent it held that the *Werner* decision, by itself, provides sufficient notice of a foreign corporation's consent to jurisdiction. *Navarrete Rodriguez*, 2019-NMCA-023, ¶ 28, 31.

**{53}**    In so ruling, we acknowledge that business registration statutes historically provided a mechanism for perfecting in-state service on foreign corporations transacting business within a state, thus conferring jurisdiction under *Pennoyer*'s presence-based framework. *See, e.g.*, *Pennoyer*, 95 U.S. at 735 (suggesting that a state may require a nonresident entering into an association in the state to appoint an agent for service of process for the association as a means of enforcing obligations). The *Werner* Court premised its construction of the BCA, in part, upon an understanding of this historical purpose. *Cf. Werner*, 1993-NMCA-112, ¶¶ 9-11 ("[D]esignation of an agent for service of process may confer power on a state to exercise its jurisdiction."). But the law of personal jurisdiction transformed in 1945 with *International Shoe*, 326 U.S. at 320. Since then, the "primary focus of our personal jurisdiction inquiry [has been] the defendant's relationship to the forum [s]tate." *Bristol-Myers Squibb*, 137 S. Ct. at 1779. Our Legislature first adopted the BCA in 1967, twenty-two years after the *International Shoe* decision. N.M. Laws 1967, ch. 81, §§ 1-136. Given this timeline, we will not presume that our Legislature intended to embrace *Pennoyer*-era fictions discarded long before the BCA's enactment. Reliance upon outdated legal fictions in construing the language of the BCA would be absurd and, as explained above, inconsistent with contemporary understandings of due process. *See* NMSA 1978, § 12-2A-18(A)(3) (1997) ("A statute or rule is construed, if possible, . . . to avoid an unconstitutional, absurd or unachievable result.").

**{54}**    We thus hold that a foreign corporation is not compelled to consent to general personal jurisdiction by either the language, intent, or purpose of the BCA. The decisions of the Court of Appeals in the proceedings below followed the applicable and directly controlling precedent of *Werner*. *See, e.g.*, *Navarrete Rodriguez*, 2019-NMCA-023, ¶ 27. However, for the reasons stated above, we conclude that the reasoning of *Werner* is outmoded and unsupported by the BCA. Accordingly, we overrule *Werner* on statutory construction grounds and reverse the Court of Appeals in its upholding of consent by registration in the four cases on appeal.

## C.    Specific Personal Jurisdiction

**{55}**    In holding that the Manufacturers did not consent to general personal jurisdiction under the BCA, we leave open the separate question of whether specific personal jurisdiction can be properly exercised in the cases at hand. Although apparently preserved in each of the district court proceedings, the question of specific personal jurisdiction was not reached by the Court of Appeals. *Navarrete Rodriguez*, 2019-NMCA-023, ¶¶ 2, 7; *Chavez*, A-1-CA-36442, mem. op., ¶ 8; *Rascon Rodriguez*, A-1-

CA-35910, mem. op., ¶ 8. We therefore remand to the Court of Appeals with instructions to consider the questions of specific personal jurisdiction presented in each of the proceedings below.

## IV.    CONCLUSION

**{56}**    In light of the foregoing, we reverse the Court of Appeals decisions with respect to general personal jurisdiction and remand to the Court of Appeals with instructions to consider specific personal jurisdiction over each of the Manufacturers.

**{57}    IT IS SO ORDERED.**

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Chief Justice**

**JULIE J. VARGAS, Justice**

**MICHAEL D. BUSTAMANTE, Judge**
**Retired, sitting by designation**